UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

10-21635-CIV-JORDAN

IN RE:

E.S. BANKEST, L.C.,

                Debtor.

. . . . . . . . . . .
                           .
LEWIS B. FREEMAN,          .
                           .
                Plaintiff, . Miami, Florida
                           . June 3, 2010
                v.         . 1:34 p.m.
                           .
BDO SEIDMAN, LLP, ET AL.,  .
                           .
                Defendants. .
. . . . . . . . . . . . . . .


- - - - -

Transcript of Motion Hearing had

before the Honorable Adalberto Jordan,

United States District Judge.

- - - - -


Proceedings recorded by mechanical stenography, transcript
produced by computer.

FRANCINE C. SALOPEK, OFFICIAL COURT REPORTER
(305)523-5568

```
APPEARANCES:

For the Plaintiff:      Steven W. Thomas, Esq.
                        Emily Alexander, Esq.
                        Thomas, Alexander & Forrester, LLP
                        14 27th Avenue
                        Venice, California  90291
                                   and
                        Paul S. Singerman, Esq.
                        Berger Singerman, P.A.
                        200 South Biscayne Blvd, 10th Floor
                        Miami, Florida  33131

For the BDO Seidman:    Elliot H. Scherker, Esq.
                        Mark D. Bloom, Esq.
                        Brigid F. Cech Samole, Esq.
                        Greenberg Traurig, P.A.
                        1221 Brickell Avenue
                        Miami, Florida  33131

For the BDO             Mark F. Raymond, Esq.
International:          Rhett Trayband, Esq.
                        Broad and Cassel
                        One Biscayne Tower, 21st Floor
                        2 South Biscayne Boulevard
                        Miami, Florida  33131

Court Reporter:         Francine C. Salopek, RMR, CRR
                        Official Court Reporter
                        United States District Court
                        400 North Miami Avenue, Room 10-1
                        Miami, Florida 33128-1807
                        (305)523-5568

                         -  -  -  -  -
```

```
 1                THURSDAY, JUNE 3, 2010, 1:34 P.M.

 2        (Judge enters courtroom)

 3            THE COURT:  Good afternoon.  Please be seated.

 4        This is Case Number 10-21635, Barry Mukamal, the

 5    responsible officer for E.S. Bankest, v. BDO Seidman, LLP,

 6    et al.

 7        If you can please announce your appearances.

 8            MR. SCHERKER:  If it please the Court, Elliot

 9    Scherker, Greenberg Traurig, on behalf of BDO Seidman.  With me

10    are Brigid Cech Samole and Mark Bloom.

11            THE COURT:  Good morning.

12            MR. SCHERKER:  Good morning.

13            MR. RAYMOND:  Your Honor, to please the Court, Mark

14    Raymond, Rhett Traband, Broad and Cassel, on behalf of

15    codefendant, BDO International.

16            THE COURT:  Good morning -- or good afternoon.

17            MR. THOMAS:  Good afternoon, your Honor.  It's Steven

18    Thomas and Emily Alexander on behalf of Barry Mukamal.

19            THE COURT:  Good afternoon.

20            MR. SINGERMAN:  Good afternoon, your Honor.  I'm Paul

21    Singerman from Berger Singerman.  We are co-counsel to the

22    Thomas, Alexander & Forrester firm, on behalf of the plaintiff.

23            THE COURT:  Good afternoon.

24            MR. SINGERMAN:  Good afternoon, Judge.

25            THE COURT:  We're here on the motion for leave to
```

1   appeal by BDO Seidman and Mr. Lenner.  So, I'm happy to hear

2   from you, Mr. Scherker.

3           MR. SCHERKER:  Thank you, your Honor.

4       May it please the Court.

5       The standards in this district for granting leave to appeal

6   an interlocutory order in a bankruptcy case are

7   well-established.  And we believe we fully satisfy those

8   standards.

9       The first requirement, of course, is that there be a

10  controlling question of law.  Judge Gold's opinion in Pacific

11  Products defines that as a question of pure law, or matters

12  that can be decided quickly and cleanly without having to study

13  the record.

14      Of course, the question of law does not have to be the only

15  question on which the bankruptcy court ruled.  That's also

16  clear in the Pacific Products opinion, in which the Court

17  noted, at page 921, that there were factual issues involved in

18  the case, but that the Court was going to treat those factual

19  issues, for the purposes of the motion for leave, as

20  established, and address whether or not there was a controlling

21  question of law.

22      We know that it's a question of law that we raise.  We know

23  it, first, because in response to our motion for summary

24  judgment in the bankruptcy court, the responsible officer

25  filed, first, a statement of material issues of disputed fact,

```
 1   point one of which was this Court has already ruled upon the

 2   law applicable to defendants' motions.  That's Exhibit 5,

 3   page 1, to our motion.

 4        THE COURT:  Okay.  Let's -- let me play this through

 5   with you.

 6        MR. SCHERKER:  Yes, sir.

 7        THE COURT:  Okay?  Let's assume that the bankruptcy

 8   court erred in treating its prior interlocutory orders as

 9   binding.  Okay?

10     In what is sort of a funky order, the bankruptcy court also

11   ruled that under Florida law, you were not permitted to pursue,

12   or could no longer pursue, your imputation/in pari delicto

13   theories or defenses, because Florida law said that you

14   couldn't on the record before it.  So, if I grant you leave to

15   appeal, and I tell the bankruptcy court, You shouldn't have

16   relied on your prior interlocutory rulings as binding, where

17   does that leave you?

18        MR. SCHERKER:  Well, it's -- Judge, it leaves us

19   without law of the case effect to the prior orders.

20     Now, remember, this was our motion for summary judgment.

21        THE COURT:  I know.  And he denied summary judgment.

22        MR. SCHERKER:  Correct.  There's going to be a trial.

23   If we win --

24        THE COURT:  Right.

25        MR. SCHERKER:  If we win the legal issue, then we can
```

1   raise that defense at trial.

2       Because if you look at the bankruptcy order at page 17,

3   which I believe was what your Honor is referring to, the Court

4   said there's a second independent ground to preclude the

5   application of the imputation/in pari delicto defense, because

6   there's a genuine issue of material fact.

7       Well, if that's the only basis on which we lose summary

8   judgment, we go to trial, and we raise our defense, as to which

9   the Court ruled there's a genuine issue of material fact.  Now,

10  we reserve our right to challenge that order at an appropriate

11  time, but we're then in a trial.

12      And, Judge, you get exactly to the reason why it is

13  important for the Court to take up this controlling issue of

14  law, because once we get past the question of whether there's a

15  controlling issue of law -- and the Court did rule as a matter

16  of law -- I mean there's no question at page 12 of the order,

17  Judge, that the ruling is as follows -- and it's unmistakable,

18  and it means exactly what it says:

19          "BDO moves for summary judgment on the grounds of

20          imputation/in pari delicto, arguing that the fraud

21          committed by four of the eight directors is imputed to

22          Freeman and bars all plaintiff's claims."

23          THE COURT REPORTER:  I'm sorry.

24          MR. SCHERKER:  I'm sorry, your Honor.  Most of the

25  time when I make arguments, there aren't court reporters

1  present, and I sometimes speak a little too quickly.

2      This Court has twice held that Freeman's claims against BDO

3  are not barred by imputation or in pari delicto as a matter of

4  law, citing the 2005 disallowance order and the 2006 imputation

5  order.  These two orders rejecting the same arguments BDO makes

6  on this motion are law of the case and binding.  If that ruling

7  is overturned, and all that's left is the ruling that there's a

8  genuine issue of material fact on our affirmative defenses,

9  then we try those affirmative defenses at trial.

10      THE COURT:  But I thought that when the bankruptcy

11  judge referred to the prior orders saying that Mr. Freeman and

12  now Mr. Mukamal were not barred by those theories, that's all

13  it meant, that they're not barred by those theories; they can

14  go forward.  But you can go forward, too.

15      MR. SCHERKER:  This Court has twice held that

16  Freeman's claims are not barred.  These two orders rejecting

17  the arguments BDO makes on this motion are law of the case and

18  binding.

19      Judge, if this order needs to be --

20      THE COURT:  I know, but saying that --

21      MR. SCHERKER:  I don't think --

22      THE COURT:  -- Mr. Freeman's claims are not barred

23  doesn't mean that you lose, because the record keeps shifting

24  as the case goes forward.  You raise it initially at the motion

25  to dismiss stage.  The judge takes facts as they are pled, if

1    they are not conclusory allegations, and rules on those

2    well-pleaded facts, then it moves to summary judgment.  And now

3    the record is different, and now the judge has to rule on

4    whether or not on that state of a record, you win or they win,

5    and he really ruled that nobody won, because he denied summary

6    judgment.

7         MR. SCHERKER:  Judge, I don't think that either side

8    has interpreted this order like that.  I certainly don't see

9    that in the papers from the other side.

10        THE COURT:  Why isn't that a reasonable way for me to

11   interpret it?

12        MR. SCHERKER:  Judge, if --

13        THE COURT:  If he's saying that -- Mr. Freeman is, for

14   lack of a better term, the plaintiff in this case, right?  So,

15   if you say he's not barred from pursuing his theory because of

16   your defenses, that doesn't mean you lose on those defenses.

17   It means that there's no bar at a given stage of a case to him

18   going forward.

19      Now, I understand what you're saying.  Everybody appears to

20   have treated that order very differently.  But I'm asking you

21   why that isn't a reasonable construction of the order.  I'm

22   going to ask Mr. Thomas the same thing.

23        MR. SCHERKER:  Well, Judge, I -- if that were the way

24   the order were interpreted, then we'd go to trial and raise our

25   defenses.  But if --

1          THE COURT:  Well, I'm wondering why -- see, if -- let

2     me back up for a step.  And you can help me and tell me where

3     you think I've made a mistake.

4          If a judge is going to rule on something as a pure matter

5     of law, no ifs, ands, or buts, so that someone is barred

6     completely from pursuing a theory, that's where the issue stops

7     and summary judgment gets granted in favor of one party or the

8     other.

9          Here, he denied your motion for summary judgment.  He did

10    not enter judgment in favor of Mr. Freeman on those defenses or

11    theories of yours, and then he goes on to address why on -- in

12    his view, on the record before him, there were material issues

13    of fact.

14         Now, I grant you that it is a funky order in the sense that

15    it deals with some issues as pure legal issues, doesn't enter

16    judgment nonetheless, and then goes on and discusses Rule 56

17    standards and finds that there are issues of material fact.

18         But reading the order as a whole, and looking at how much

19    was put into that order about the record, and what certain

20    witnesses testified about, and their knowledge or lack of

21    knowledge about the fraud that was going on at Bankest, I

22    interpreted the order as simply not granting you judgment as a

23    matter of law under Rule 56 and letting everything play out at

24    trial.  Maybe I've got it completely wrong.

25              MR. SCHERKER:  Well, Judge, if I might answer you by

1    reading a little bit from the order.

2              THE COURT:  Sure.

3              MR. SCHERKER:  Because I think that's the best way to

4    do it.  At page 13 of the order, under the heading,

5    paragraph 1, "2005 summary judgment order."  He goes back to

6    the 2005 disallowance order and says this is what the order

7    said:

8              "Their fraudulent conduct could not be imputed to

9         Bankest as a matter of law."

10   Then he said:

11             "Because BDO had a duty to detect the fraud at

12        Bankest, BDO could not benefit from the fraud it

13        failed to detect by asserting claims or defenses based

14        on that fraud."

15   Paragraph 2:

16             "When BDO again raised the imputation defense in

17        its 2006 motion to dismiss, this Court held that the

18        2005 order precluded BDO from raising the defense."

19   Next paragraph:

20             "The Court further held that imputation/

21        in pari delicto" -- and I think this is the most

22        important part here, Judge -- "could not apply in this

23        case as a matter of law.  BDO cannot avail itself of

24        the imputation defense based on the capital officer's

25        fraud when BDO specifically agreed to detect that very

1    fraud."

2        So, Judge, as I read that language, the law of the case

3    effect that the district court, we submit -- I'm sorry -- that

4    the bankruptcy court, we submit, quite erroneously gave to the

5    prior orders plays out in the order in ruling that we cannot

6    raise this defense as a matter of law.  That's what the

7    bankruptcy judge said.

8        And if you go --

9        THE COURT:  Why -- if that's his ultimate legal

10   conclusion, why is he wrong?

11       MR. SCHERKER:  He's wrong in giving the order of law

12   of the case effect.

13       THE COURT:  No, no.  Ultimately, on the merits, why is

14   he wrong?

15       MR. SCHERKER:  Well, your Honor, he's wrong --

16       THE COURT:  If I reverse him because he improperly

17   relied on the prior interlocutory rulings as binding, but it

18   turns out that those rulings were right nonetheless, you're

19   going to go back down and get the exact same result.  And this

20   appeal would have been a complete waste of time.

21       MR. SCHERKER:  We would have the right, I believe, on

22   an interlocutory appeal to address the merits of those rulings,

23   because we have a controlling question of law that gives this

24   Court jurisdiction.  And we fully briefed in the papers that

25   are before this Court why BDO did not have the duty that the

1    district -- that the bankruptcy court attributed to us under

2    the terms of the engagement letters -- is far beyond the scope

3    of our motion -- that we did not have -- that an accountant --

4    accounting firm in an ordinary audit doesn't have the duties,

5    and we never assumed the duties, that the bankruptcy court and

6    that Freeman attributed to us.  And once that linchpin is

7    removed -- but I don't know that you can take this order and

8    say that the judge would have ruled that way anyway.

9         THE COURT:  Well, let's go --

10        MR. SCHERKER:  We don't know that for a fact, and

11   we've never had a chance to litigate it on a level playing

12   field, which hopefully we would have on this appeal.

13        THE COURT:  Well, let's talk about the imputation

14   defense.  The bankruptcy court laid out testimony, which taken

15   in the light most favorable to Mr. Mukamal, indicated that a

16   number of the directors and officers at Bankest were unaware of

17   the fraud.  Right?

18        MR. SCHERKER:  That testimony is cited in the order as

19   creating a genuine issue of material fact, not as resolving it

20   as a question of fact, because, of course, the Court couldn't

21   do that.

22        THE COURT:  I know.  I know.  Just give me second.

23        MR. SCHERKER:  Sorry, your Honor.

24        THE COURT:  So -- and then he cites the O'Halloran

25   case from the second district, which says where you have that

1    scenario, you can't impute the fraud of some directors and

2    insiders to the corporation.  Right?

3       So, at best, what you're going to get on that issue is a

4    trial.  Right?  You're not entitled to judgment as a matter of

5    law on that theory or defense.  Am I right or am I wrong?

6            MR. SCHERKER:  Judge, we moved for summary judgment on

7    the extant record.

8            THE COURT:  I know, and I'm asking you --

9            MR. SCHERKER:  And if we don't get summary judgment --

10   and we obviously believed we were entitled to it, as -- based

11   on the undisputed facts --

12           THE COURT:  I'm asking you what gives you the right to

13   judgment as a matter of law on that imputation defense in light

14   of O'Halloran?

15           MR. SCHERKER:  Judge, the record is -- I hate to use

16   the word "rife," but it is rife -- the factual record of this

17   case is rife with ample evidence -- and we'd be happy to brief

18   that for your Honor -- with ample evidence of actual and

19   constructive knowledge, on behalf of the other four directors,

20   of exactly what was going on at Bankest.  And how -- remember,

21   these officers, these -- the four other officers, were also the

22   president and the top officers of Espirito Santo Bank, which

23   was the lender.

24           THE COURT:  I know.  I sat through a five-month trial.

25           MR. SCHERKER:  Exactly.  So, then your Honor knows the

1    facts as well as anyone in this courtroom.  And you heard

2    Mr. Mendez testify for -- I forgot how many days, but I'm

3    sure --

4              THE COURT:  Twenty-one.

5              MR. SCHERKER:  I'm sure you remember.

6        So, the level of awareness at Espirito Santo Bank, and on

7    behalf of the officers of Espirito Santo Bank, we submit, was

8    good enough to get us a summary judgment.  But, respectfully, I

9    don't need to win that point to either get myself an appeal, I

10   believe, your Honor, or win that appeal.  Because even if you

11   accept this order on its face, without other rulings that I

12   just read out, that means there's a trial.  And the question

13   for this Court, we submit, on this very important interlocutory

14   appeal is whether that trial is going to go forward with us

15   being able to raise the imputation/in pari delicto defense.

16       And I think that Judge Gold's words in Pacific Products,

17   your Honor, particularly because this Court, and not the

18   bankruptcy court, is ultimately going to try this case, I think

19   are written as if Judge Gold had had this case in mind.

20   Because if you read the last paragraph of Pacific Products --

21   if I might, your Honor:

22             "Without intervention at this point, resolution

23         of the appellate issues raised herein would be

24         extremely prolonged.  Appellants would retain the

25         right to assert these and any other appellate grounds

1        at a full plenary appeal following a trial on the

2        merits.  This Court will be forced to consider the

3        merits of these appeals at some point.  But

4        consideration now bears the benefit of crystallizing

5        the issues at trial and, importantly, staving off a

6        potential retrial should this Court reverse the

7        bankruptcy court order later."

8        Now, there's never going to be a final bankruptcy court

9    order.  Judge Cristol is essentially sitting as a magistrate,

10    although we have to come before the Court on an interlocutory

11    appeal under Section 158.  There's just as much reason, we

12    submit, for the Court to address the legal issue now as there

13    would be if this were an R & R from a magistrate.  Because if

14    the Court had withdrawn the reference entirely, and either a

15    magistrate or Judge Cristol sitting as a magistrate had ruled

16    exactly as he did now, the Court would take it up on a review

17    of the R & R and would address the issue of law.

18        If we win on the issue of law, and the Court overturns law

19    of the case, I suppose we would have to litigate whether that

20    legal ruling is correct, but we're quite comfortable with the

21    position on that.  And we would remove the impermeable barrier

22    to raising our defenses at trial.

23        Because otherwise, we submit, what is just as likely to

24    happen is we're before the Court ready for trial, under the

25    terms of the reference orders from December, 2006, and

1    January, 2007, and then just as every judge under the case law

2    we cite -- which shows why the order is so wrong -- may

3    reconsider prior interlocutory rulings, this Court would be

4    entitled to reconsider the prior interlocutory ruling then.

5              THE COURT:  So, why I do need an interlocutory appeal

6    now?

7              MR. SCHERKER:  Because, Judge, if you go back to my

8    analogy, if this were an R & R, and the case were in the

9    posture that it's in before this Court, would the Court sit on

10   the R & R for several months, and right when the case is ready

11   to go to trial rule on whether an affirmative defense could be

12   raised?  We would submit not.

13             THE COURT:  If the R & R was denying summary judgment

14   and nothing else, maybe.

15             MR. SCHERKER:  If the R & R ruled that as a matter of

16   law a defense couldn't be raised, which we think is what the

17   order says.  Obviously, if the Court says it means something

18   different, then it means something different.  But the order

19   before the Court, as we read it, and I think as my opponents

20   read it, unless something new happens this afternoon, says that

21   the defense is barred as a matter of law.  If that is what the

22   order means, we submit it's just as important for the Court to

23   take it up now as it would be if this were an R & R and

24   reference had been withdrawn completely.  Because we're still

25   in the pretrial stage, and the affirmative defenses need to be

1    settled, just as the issue needed to be settled in Pacific

2    Products on whether or not an issue had been settled as a

3    matter of law, before the case goes to trial.

4        If this were an ordinary bankruptcy case, our position

5    would be exactly the same, your Honor, because the case would

6    go to trial.  All we're saying is that the Court, in the

7    exercise of its discretion, as to which it has considerable

8    discretion, in determining whether to grant an interlocutory

9    appeal of a nonfinal bankruptcy order, needs to look at it,

10   obviously, through the prism of the way this case is actually

11   going to be tried.

12       And just as the bankruptcy court will ultimately -- the

13   district court will ultimately consider a bankruptcy court's

14   order in a final appeal, this Court will consider it without

15   there being an appeal when the case is before the Court for

16   trial.  It simply makes more sense, it's more efficient, and it

17   advances, in the words of the test, the ultimate determination

18   of the case to do so now.

19            THE COURT:  Slow down, slow down.

20            MR. SCHERKER:  I just stopped.

21            THE COURT:  Is the summary judgment deadline passed in

22   the bankruptcy court, or is there still time to file more

23   summary judgment motions?

24            MR. SCHERKER:  I believe I'd have to ask somebody who

25   would know that better than I would.

```
 1              THE COURT:  Okay.  You can let me know when you get
 2    back up for your --
 3              MR. SCHERKER:  I believe it has passed, because we're
 4    at the stage of the judge -- Judge Cristol this morning ordered
 5    the parties to come back with pretrial stipulations, either
 6    joint or competing, within 14 days.  So, that's the actual
 7    stage of the -- but, obviously, if the order were to be
 8    reversed, then the Court would have to take up the summary
 9    judgment issues again.
10              THE COURT:  Okay.  Okay, Mr. Scherker, thank you very
11    much.
12              MR. SCHERKER:  Thank you, your Honor.
13              THE COURT:  I'll give you five minutes for rebuttal.
14       Mr. Thomas?
15              MR. THOMAS:  Good afternoon, your Honor.
16              THE COURT:  Hello.
17              MR. THOMAS:  Maybe I should start by answering your
18    question that you said you were gonna pose to me.
19       I think the answer is you're right.  This order was
20    structured, as I understand it, you know, in three ways.  One,
21    I've ruled against you twice -- I, the bankruptcy court -- one
22    in a motion to dismiss, which you didn't appeal; one in the
23    summary judgment order; and now here I'm coming again.
24       And then the second reason was, there are independent --
25    I'm gonna look at the law again, and you lose under the law
```

1   again, and went back and looked at the O'Halloran case.  And

2   the Court goes through the standards of law, and then says, and

3   on top of all that, there are genuine issues of material fact.

4       So --

5           THE COURT:  Which leads everyone to wonder what

6   happens to the defenses at trial?

7           MR. THOMAS:  I think that's right.  And I think what

8   they did was they only appealed a very narrow issue.  Their

9   appeal is only on the first grounds, whether or not the Court

10  erred in relying on its prior orders.  They didn't appeal the

11  independent bases for -- under the law, that they lost for

12  in pari delicto.

13          THE COURT:  Okay.  But let's assume they hadn't

14  appealed anything, and now you were going to go to trial.  And

15  let's say the trial was staying in the bankruptcy court,

16  because everybody had agreed to try it there.  And they try to

17  present evidence on their imputation/in pari delicto defenses.

18  What happens?

19          MR. THOMAS:  I think we say, Judge, as a matter of

20  law, they can't present it.

21          THE COURT:  Because?

22          MR. THOMAS:  Because of the reasons you set forth in

23  your order.  Number --

24          THE COURT:  Which reasons?  Because some of the

25  reasons say there's an issue of fact.

```
 1          MR. THOMAS:  Some of the ones say, okay, there's also

 2   a genuine issue of material fact.  There are a few reasons that

 3   are just purely legal issues that they didn't appeal from

 4   before you here.  One of those is that they're not

 5   coconspirators.  And as a matter of law, under coconspirators,

 6   you can't have the in pari delicto defense.  And I can cite you

 7   to that part of the order.

 8          THE COURT:  No, no, I've read it.

 9          MR. THOMAS:  You read it.  Okay.

10      The second part is the -- under your own engagement

11   letters, which aren't disputed, that you can't say, it's my job

12   to detect fraud, and then turn around and say, well, you

13   defrauded me.  And that was entered as a matter of law.

14      So, at least those two independent legal grounds, we would

15   say, Judge, they're barred as a matter of law.  So, they can't

16   do it.

17      Now, there is also disputed issues of fact on whether there

18   was a benefit given to Bankest because of the -- and the

19   looting, whether or not the Orlanskys looted the company, and

20   he ultimately said there are disputed issues of fact.

21          THE COURT:  Why would he enter alternative rulings if

22   he is barring them as a matter of law from going forward?

23          MR. THOMAS:  I just think he went to all the grounds

24   that were argued by them in their motion for summary judgment.

25   And he said, Okay, argument number one, you know, you lose,
```

```
 1    because you can't agree to detect fraud, put it in your
 2    engagement letter, have your audit partners say it's my duty to
 3    defect fraud, and then come in here and say you were defrauded.
 4    You lose as a matter of law.  And there's a New Jersey Supreme
 5    Court case that says the same thing, NCP, and he cited it.
 6         And then he says, You also argued that, you know, that you
 7    were entitled to it, but you can't, because you're
 8    coconspirators.  You lose as a matter of law.
 9         You also argued, though, that there was some benefit.  And
10    that gets you outside of it.  Well, you lose that, because
11    under O'Halloran, they're innocent directors as a matter of
12    law.  But even if you didn't --
13              THE COURT:  No, but in --
14              MR. THOMAS:  -- there's an issue of fact about
15    whether -- I'm sorry, go ahead, Judge.
16              THE COURT:  In pari delicto and imputation are very
17    close, intertwined doctrines, but they're not conceptually one
18    and the same.
19              MR. THOMAS:  Yes.  That's true.  They're very close,
20    and -- but there are some nuances at the --
21              THE COURT:  No, on imputation, for example, why
22    shouldn't they be allowed to present evidence that despite some
23    of the testimony of the directors who said they didn't know
24    anything about the fraud, there's evidence to suggest
25    otherwise?  Why shouldn't they be allowed to put on evidence as
```

1  to imputation at trial?

2         MR. THOMAS:  Well, they shouldn't be allowed to put on

3  evidence as to imputation at trial because of the duty to

4  detect fraud point and because of the innocent director point.

5         THE COURT:  But those are not one and the same.

6  Imputation and in pari delicto are legally distinct defenses.

7         MR. THOMAS:  They are.  But that issue goes also to

8  in pari delicto.  What wouldn't also go to in pari delicto is

9  the coconspirator point -- I mean also go to imputation is the

10 coconspirator --

11        THE COURT:  No, in pari delicto is the coconspirator

12 point.

13        MR. THOMAS:  Right.  So, that legal point doesn't go

14 to imputation.

15        THE COURT:  Correct.

16        MR. THOMAS:  Right.

17        THE COURT:  So, why aren't they allowed to put on

18 evidence, at least as to imputation, that the fraud of the

19 corporation -- excuse me -- of some corporate officers, right,

20 should be imputed to the corporation, if it turns out that all

21 of the responsible controlling individuals knew about the fraud

22 and participated in it?

23        MR. THOMAS:  And the reason is because the one legal

24 reason that does go to imputation is the duty to detect fraud,

25 goes to imputation.  They still can't turn around and argue

```
 1   imputation when they had the duty --
 2            THE COURT:  You're telling me that if a corporation
 3   owned by three shareholders engages in outright fraud, all
 4   three shareholders know about it, they concoct the scheme to do
 5   it, to defraud their creditors, right?  You're telling me that
 6   the corporation itself can then go after the accountant?  That
 7   makes absolutely no sense to me.
 8            MR. THOMAS:  No, your Honor, that's not what I was
 9   saying.
10            THE COURT:  Okay.  Tell me what you're saying then.
11            MR. THOMAS:  Because in our case, that's not our case.
12            THE COURT:  I understand that.
13            MR. THOMAS:  Our case is the Espirito Santo, where
14   there were four innocent directors.
15            THE COURT:  Well, four innocent directors in the light
16   most favorable to you at summary judgment.  My question to you
17   is:  Why aren't they allowed to litigate that issue at trial?
18            MR. THOMAS:  I see what you mean.  So, you're saying
19   that the point about the fraud, which in my mind includes the
20   innocent directors, you're saying that in and of itself could
21   go broader to whether or not they were innocent, and could they
22   make that argument at trial?
23            THE COURT:  No.  Here's the way I look at it.  I
24   understand that with regards to the in pari delicto defense --
25            MR. THOMAS:  Right.
```

FRANCINE C. SALOPEK, OFFICIAL COURT REPORTER
(305)523-5568

```
1          THE COURT:  -- that the bankruptcy court found that
2    there were a couple of legal reasons why they couldn't proceed
3    on that theory.  Number one, they deny that they were a
4    coconspirator.  So, they can't be in pari delicto with the
5    wrongdoers.
6          MR. THOMAS:  I'm with you.
7          THE COURT:  Number two, you agree to detect the fraud,
8    and now you can't try to weasel your way out of that duty by
9    claiming that there was some wrongdoing going on, when you
10   should have detected that wrongdoing.
11         MR. THOMAS:  Yes.
12         THE COURT:  As I understood the bankruptcy court's
13   order, those are the two reasons, legal reasons, why they are
14   barred on the in pari delicto defense.
15         MR. THOMAS:  Right.
16         THE COURT:  Okay.  Imputation, as I understood the
17   bankruptcy court's order, is slightly different.  And there he
18   ruled, at least in part, that there were material issues of
19   fact, because under O'Halloran, a number of the other directors
20   testified that they were unaware of the fraud.  And if that's
21   the state of affairs, they don't win.  But if there's an issue
22   of fact about whether or not there really are innocent
23   directors, why can't that imputation defense be tried at trial
24   aside from the in pari delicto defense?
25         MR. THOMAS:  I'm sorry, Ms. Alexander was saying
```

1    something to me.

2        Before I say that, just let me ask you a question.  How --

3    for that purpose, how is imputation different than

4    in pari delicto, though?  It's the same -- they can't back door

5    into in pari delicto and say your claim is barred.  The only

6    thing they could do is argue imputation for a purpose of

7    perhaps comparative fault.  But they couldn't back door

8    themselves and say, it's not in pari delicto, we're calling it

9    imputation, and your claim is barred.

10       So, the only time when imputation should be different --

11               THE COURT:  But O'Halloran says that if everybody who

12   has a say in the corporation's affairs is involved in the

13   fraud, you may not be able to go forward.  You, your client may

14   not be able to go forward, right?  Isn't that what O'Halloran

15   says?

16               MR. THOMAS:  That's right.  But that's back to

17   in pari delicto is the reason.  The imputation is only as to

18   it -- that's a knowledge element for evidentiary purposes.

19   In pari delicto is the only doctrine that bars us from going

20   forward.  So, the only purpose for them to put on evidence for

21   imputation would be to put knowledge in the -- we would be

22   attributed with some knowledge.  But it can't be a back door

23   into in pari delicto, which is already legally barred.

24       So, when I said earlier -- and I think you agreed with

25   me -- about the nuances between imputation and in pari delicto,

1   it's not too different -- you can't get to in pari delicto

2   through imputation.  There are a nuance (*sic*).  But imputation

3   is the imputation of knowledge.  It doesn't then back door you

4   into in pari delicto.  You're barred under in pari delicto

5   under this legal grounds and this legal grounds, but we're

6   gonna get you the same result through imputation.  That's not

7   the law under O'Halloran or anywhere else that I'm aware of.

8           THE COURT:  But O'Halloran doesn't speak about

9   in pari delicto.  It treats imputation separately.

10          MR. THOMAS:  It does treat imputation separately, but

11  it's not a different bar.  You can't get to in pari delicto

12  through -- may I just see what Ms. Alexander wants before I

13  respond further?

14          THE COURT:  Of course.

15      *(Discussion had off the record)*

16          MR. THOMAS:  Ms. Alexander makes the point that -- I

17  guess basically what I was just arguing to you similar -- takes

18  us back to the bankruptcy court -- about where the purposes of

19  the use of the word "imputation" in O'Halloran, was that

20  somehow giving a new doctrine independent of in pari delicto,

21  and the answer was no.  And that's why in his order, he doesn't

22  treat them differently.  That's why he says for the purposes of

23  what he's ruling here, imputation/in pari delicto are the same.

24          THE COURT:  But he does separate them out in the text

25  of his order.

FRANCINE C. SALOPEK, OFFICIAL COURT REPORTER
(305)523-5568

```
 1            MR. THOMAS:  Well, he does later.  But if you look
 2  at -- I'm looking at page 17.
 3            THE COURT:  I don't have it here in front of me.
 4            MR. THOMAS:  May I approach?
 5            THE COURT:  No, I don't need it.  I've got it back in
 6  chambers.
 7            MR. THOMAS:  So, for those purposes that we're talking
 8  about, I think from a legal perspective, imputation cannot be a
 9  replacement for in pari delicto.  And that, in fact, imputation
10  goes to knowledge.
11       But that being said, your Honor --
12            THE COURT:  But in pari delicto --
13            MR. THOMAS:  Yes.
14            THE COURT:  -- is a claim that the defendant and the
15  plaintiff were in cahoots.  That's a very simple way of saying
16  it, but that's the essence of that theory.  Right?  And if you
17  and I both knew that we were doing wrong, you now can't sue me
18  because the wrong didn't quite work out the way we thought it
19  was going to work out.
20            MR. THOMAS:  That's right.
21            THE COURT:  Right?
22            MR. THOMAS:  That's right.
23            THE COURT:  Okay.  Imputation is different, because
24  imputation focuses only on the plaintiff and what the
25  plaintiff's conduct was, irrespective of the defendant.  That's
```

1   why in O'Halloran, there's no discussion about the role of the

2   defendant.  It's all about what the plaintiff's inside people

3   did or didn't do, or knew or didn't know.

4        That's why I said to Mr. Scherker that this is a funky

5   order.  Because, at first, there are legal reasons why it looks

6   like the defense or defenses are barred, and yet there is

7   additional discussion denying the defenses, because there are

8   material issues of fact.

9        So, when you read the order, you don't know whether or not

10  the defenses are going to be allowed to be tried, because

11  summary judgment's been denied, or whether or not the judge is

12  going to bar them as a matter of law, based upon his prior

13  rulings.

14       I don't know what to make of the order.  That's what's

15  confusing to me.  It would be a lot easier for me to decide

16  this motion for leave to take an interlocutory appeal if the

17  bankruptcy court had said one or the other.  You are barred

18  because of my prior rulings, and, by the way, those rulings are

19  correct, here's the legal analysis independently, done, end of

20  story.  Or if he had said there are issues of fact on both of

21  those defenses, you don't get summary judgment.  And what

22  happens when someone doesn't get summary judgment and there's

23  not a cross-motion for summary judgment?  There's a trial.

24       So, I don't know what to make of the order.

25            MR. THOMAS:  But -- I understand what you're saying.

1    What he did was both.

2           THE COURT:  I know.

3           MR. THOMAS:  Right?

4           THE COURT:  But the second part of the both is legally

5    irrelevant.  Most times judges will -- if a judge is issuing an

6    interlocutory decree, he or she might give four or five

7    alternative reasons for coming to the same resolution.  That's

8    not what happened here, because the resolution is not the same

9    in the beginning of the order as it is in the second part of

10   the order.

11       The first part of the order says you lose as a matter of

12   law.  You are barred.  You can't present these defenses.  Done.

13   The second part of the order says you don't get summary

14   judgment, because there are material issues.  So, which is it?

15          MR. THOMAS:  I see what you're saying.  I mean,

16   obviously, I can't get into Judge Cristol's head.

17          THE COURT:  No, I'm not asking you to.

18          MR. THOMAS:  But as I read the order, what I

19   understand is it's all getting to the same place -- you lose.

20   You lose on one, two, and three.

21          THE COURT:  Why don't I just ask Judge Cristol to do

22   me a favor and clarify his order as to whether or not he is

23   denying summary judgment in the traditional Rule 56 sense, and

24   letting these defenses, or one of them, go to trial, because

25   there are disputed issues, or whether his order means to bar

```
 1   one or both of those defenses as a matter of law before any

 2   evidence is presented at trial?  Why not do that?

 3          MR. THOMAS:  Because you don't need to, because they

 4   can't meet the standard for appeal anyway.  And we're already

 5   at the pretrial order stage.  And in the near future, I'm gonna

 6   be standing before you asking for a trial date, and you're

 7   gonna decide this issue anyway.

 8      So --

 9          THE COURT:  Well, don't make plans until 2012 or 2013.

10          MR. THOMAS:  Well --

11          THE COURT:  Because I've got a six- to eight-month --

12   I have a three-month criminal trial next February, and a six-

13   to eight-month criminal trial in Mutual Benefits after that.

14   So, you're looking at 2012 at the earliest for any sort of a

15   trial, at the earliest.  And that's if the criminal docket

16   cooperates.

17          MR. THOMAS:  Well, I -- you know, look, I'm on the

18   plaintiff, so I always want to get to trial in a hurry.

19          THE COURT:  I know.  I'm just telling you --

20          MR. THOMAS:  But I would say, Judge --

21          THE COURT:  -- what the state of the record is.

22          MR. THOMAS:  -- this is a case which, you know -- I

23   mean, my next words would normally be, well, maybe we could be

24   transferred where we could go faster.  But the truth is, it's

25   ridiculous not to try this case before you, since you already
```

```
1    know -- I mean since you sat through the criminal trial.
2              THE COURT:  I'm just telling you --
3              MR. THOMAS:  I would do it, but it does seem a little
4    odd.
5              THE COURT:  I'm not trying to get away from this case.
6    I'll try it on the civil side.  It's not a problem.  I'm just
7    telling you that I have a three-month securities fraud trial
8    starting next February.  And after that, I have a monster
9    criminal case, Mutual Benefits, which is six to eight months.
10   If those cases go, and I think they will, because the
11   Sentencing Guidelines and sentencing exposure of those
12   defendants is so high that a lot of them, I think, are going to
13   go to trial, that whole year is shot.  Next year is just shot.
14      I'm just letting you know so that --
15             MR. THOMAS:  I appreciate it, and maybe we'll think
16   about it.  But I sort of -- I mean -- like I said, you sat
17   through the criminal trial.  It doesn't make a lot of sense for
18   someone else to do it.
19             THE COURT:  No, it is what it is.  I'm just letting
20   you know ahead of time that if the calendar plays out the way
21   it is, I have the Lauer three-month trial in February, and then
22   I've got Mutual Benefits on its heels.  And that's -- depending
23   on how anyone cuts the numbers, that's about ten to 11
24   months -- nine to 11 months of trial in a single year on two
25   cases.  I can't do any more.
```

1          MR. THOMAS:  And you don't see a plea coming, huh?

2          THE COURT:  Not when the losses in Mutual Benefits are

3    alleged to have exceeded $750 million.

4          MR. THOMAS:  Hum.  All right.  Well, I'll think about

5    that one.

6          THE COURT:  It doesn't look likely to me.

7          MR. THOMAS:  All right.

8          THE COURT:  I don't think the government is offering

9    two- or three-year pleas.

10       *(Laughter)*

11          MR. THOMAS:  I won't even bother calling them to ask.

12    Let me go back to what I said, though.  They only appealed

13    this narrow issue.  They didn't appeal everything you and I are

14    talking about.  And one of the things that was written here,

15    and we cited a case that these interlocutory appeals are as

16    rare as hen's teeth.  And since they didn't appeal the issues

17    you and I are talking about -- and whenever there's multiple

18    grounds, it's settled law that you can't -- you know, you

19    shouldn't grant interlocutory appeal, and I think they lose

20    anyway.

21          THE COURT:  I know, but the multiple grounds are

22    inconsistent.  That's the problem.

23    See, if Judge Cristol had ruled on five different legal

24    theories as to why they are barred as a matter of law, and they

25    only sought to appeal one or two of those, I would have denied

1    this on the papers the minute it came in.  But his alternative

2    grounds lead to different results.

3           MR. THOMAS:  Because you have a different view of

4    imputation and in pari delicto, I think, based upon the law,

5    than I do.

6           THE COURT:  Based on the order.  Based on the order,

7    which is what I have.  He treats them separately in the text of

8    the order.

9           MR. THOMAS:  I understand.

10       May I just say something to Ms. Alexander real quick?

11          THE COURT:  Sure.

12          MR. THOMAS:  Thanks.

13       *(Discussion had off the record)*

14          MR. THOMAS:  Uhm --

15          THE COURT:  That's the problem, that the alternative

16   rationale leads to a different result.  Because if they're not

17   barred as a matter of law, then what they get is a trial, or at

18   least they would try before the Rule 50 stage to try to present

19   evidence that someone, everyone at Bankest knew exactly what

20   was going on; and, therefore, some of your claims may not be as

21   viable as you think.

22       But if I grant leave -- let's play the other -- I played

23   the devil's advocate with Mr. Scherker at the very beginning.

24   I'll play it with you now.

25       I grant leave to appeal.  So, let's think of the worst

1  scenario for you, just like I played out the worst scenario for

2  him.  I find that Judge Cristol should not have relied on his

3  prior orders as binding, even though he could certainly treat

4  them as persuasive and reach the same result yet again.  It

5  goes back down to him.  At that point, everyone will know for

6  sure whether or not he's barring them as a matter of law, or

7  he's denying summary judgment because there are material issues

8  of fact.  And at least then everyone knows what the playing

9  field is and everybody goes forward with it.

10      So, why isn't that a good alternative?

11          MR. THOMAS:  Because I think that alternative is

12  different than the one you proposed before.

13          THE COURT:  I know.

14          MR. THOMAS:  And even if you grant it --

15          THE COURT:  I get to propose all sorts of stuff.

16          MR. THOMAS:  I know.  Even if you grant it -- because

17  if you say that, they still lose.

18          THE COURT:  How do I know that?

19          MR. THOMAS:  So, it doesn't change the result.  It

20  only changes why.

21          THE COURT:  You say they lose, but losing isn't always

22  the same.  You can lose a summary judgment motion in two ways.

23  You can move for summary judgment and the judge says, Hey,

24  you're right, there are no material issues of fact, but you

25  know what, the law is not what you think it is, and I'm going

```
 1   to enter summary judgment for the other side.  That's a big

 2   loss.  Or you can move for summary judgment, the judge can say

 3   there are material issues of fact, your summary judgment motion

 4   is denied, but you get to proceed on your claim at trial.

 5   That's a lesser loss.

 6            MR. THOMAS:  Right.

 7            THE COURT:  That's the problem here.

 8            MR. THOMAS:  No, I --

 9            THE COURT:  There are two types of losing.

10            MR. THOMAS:  I understand.  The case is going to trial

11   either way.  The question is whether -- on the claims.  The

12   question is whether one defense they have they're gonna be able

13   to make it trial or -- put on evidence at trial or not.  Either

14   way, they're going to trial.

15            THE COURT:  What's left to do in the bankruptcy court?

16            MR. THOMAS:  Nothing.  We're gonna put in a pretrial

17   order in two weeks that says here's the stipulate --

18   nonstipulated facts, and up we go.  That's not -- they filed

19   motion for leave to take some more discovery, which he's gonna

20   rule on in two weeks, which is -- I haven't -- they just handed

21   us the motion this morning, but it has to do with Lew Freeman.

22   I don't know whether that's gonna be granted or not.  But

23   whatever, it's gonna be very limited discovery.

24        So, your Honor, when I asked Ms. Alexander to come up and

25   spoke to her and caught Mr. Singerman's eye -- I mean I hate to
```

```
 1    say it, because I want to keep going, but I think you're right.
 2    I think that asking Judge Cristol to clarify his order, which
 3    way he's going, then you'll know.
 4            THE COURT:  The other possibility is to deny the
 5    motion for leave to take an interlocutory appeal, but once
 6    everything comes back here, is then for me to deal with those
 7    interlocutory rulings as I see fit.
 8            MR. THOMAS:  Well, that's what I thought you were
 9    gonna --
10            THE COURT:  Except that that might change your trial
11    strategy and your preparation.
12            MR. THOMAS:  Uhm, it may.  But we're okay with -- I
13    mean we're okay.  We'll deal with whatever your rulings are.
14    We'll try our case.  But -- I guess asking you the most
15    efficient way -- I don't have a problem with you deciding, you
16    know, what it means.  But if you're asking me what you said, I
17    don't have a good response.  I can't tell you that asking
18    Judge Cristol to clarify what he meant is not the right thing
19    to do.  It sounds like the right thing to do.  And then if they
20    have a basis to appeal, they'll file -- you know, you'll either
21    let them appeal -- but probably by that point, we'll be in
22    front of you and they'll have their appeal.  They'll be
23    standing in front of you at least on motion practice.
24         So, I -- until I stood before you, I didn't -- because I
25    didn't think of imputation/in pari delicto, the difference, the
```

```
 1    way you've described it to me.
 2              THE COURT:  They may not be.  I'm just reading the
 3    order.
 4              MR. THOMAS:  No, I -- it's a fair point.  I hadn't
 5    considered it.  But given what you've said, allowing him to
 6    clarify which he meant, so that there's not an inconsistency,
 7    seems to be respectful of the bankruptcy court, and also more
 8    efficient than just denying their leave to appeal.
 9        I think on the law, you have to -- well, you don't have to,
10    because there's some discretion in 1292(b).  But given what
11    they narrowly appealed, I think all the law is against them on
12    appealing.  But if you let him clarify his order, then you sort
13    of achieve your efficiency, and then they can appeal if they
14    have a right.
15              THE COURT:  Okay.
16        Okay, Mr. Thomas, thank you very much.
17              MR. THOMAS:  Thank you, Judge, I guess.
18        (Laughter)
19              THE COURT:  Mr. Scherker.  Is imputation different
20    than in pari delicto, or are they both one and the same or
21    different sides of the same coin?
22              MR. SCHERKER:  Judge, if I might refer the Court to
23    tab 3, Exhibit 3 to our motion, which is our summary judgment
24    motion.  The Court's exactly right.  That's exactly what we
25    briefed to the bankruptcy court in our summary judgment motion
```

 1  beginning at page 5, imputation defeats reliance.

 2  In pari delicto doesn't let a wrongdoer recover for the

 3  wrongdoer's own conduct.

 4      So, they are cousins, of course.  And -- but the bankruptcy

 5  court pretty much lumped them together and said both were

 6  barred -- imputation as a defense to reliance, and

 7  in pari delicto as a defense to one who commits wrongful

 8  conduct.

 9      Judge, if I may, I think it's important, because -- I wrote

10  this down.  Mr. Thomas said a number of times that we only

11  appealed a very limited -- somehow -- or the scope of our

12  appeal is limited.  I went back and looked at our notice of

13  appeal, and our notice of appeal says we're appealing the

14  bankruptcy court's order.  Now, in order to get leave to

15  appeal, there must be a controlling issue of law in the case.

16  So, we appropriately briefed that in our motion for leave to

17  appeal.

18      But as Judge Gold noted in the Pacific Products order,

19  there were some underlying questions in the case that were

20  reserved for -- if the appeal were to be granted.  So, I don't

21  think it's appropriate, or even correct, to say that the Court

22  has to put on blinders, and obviously the Court is not, because

23  we're having a fairly free-ranging discussion in talking about

24  some of these things.

25      Now, for the Court -- I believe for the Court even to grant

1    the limited relief that you proposed, which is a remand to the

2    bankruptcy court for clarification of its order, the Court

3    would still have to take jurisdiction of this appeal and grant

4    the motion for leave.  And that might be a form of relief that

5    the Court could consider.

6        But I don't think that Mr. Thomas is fairly taking enough

7    credit for his side of the courtroom when he tells you that, I

8    don't know what was in Judge Cristol's mind, because at page 42

9    of the order, it shows that the order was submitted by counsel

10   for the plaintiff, Lewis B. Freeman, to Judge Cristol.  So,

11   this is the order with which the plaintiff presented

12   Judge Cristol --

13        THE COURT:  But there's a difference between

14   submitting an order for a judge to enter it and knowing exactly

15   what the judge's motivation and thinking is in entering it.

16        MR. SCHERKER:  I understand, but the words in this

17   order were plaintiff's words, and Judge Cristol adopted them.

18   We're not saying it's not Judge Cristol's order.  It is very

19   much Judge Cristol's order.  But in terms of explaining it, I

20   think, quite frankly, as difficult as it may be to resolve the

21   order, the order says exactly what it says, which is, I'm going

22   to grant summary judgment, as you said, Judge, because you're

23   wrong on the law.  Even if --

24        THE COURT:  Well, he never grants summary judgment.

25        MR. SCHERKER:  I'm sorry, deny summary judgment,

```
 1   because you're wrong on the law, and I will say to you that

 2   your defenses are barred.  I will also say that there are

 3   factual questions in the case.  Well, that second part of the

 4   order is irrelevant, quite frankly, because that second part of

 5   the order gets us a trial.  We don't like it, because we think

 6   we should have gotten summary judgment, for the reasons that

 7   are in the motion, and particularly on the

 8   imputation/in pari delicto defenses.  But we'll live with a

 9   trial at which we can present our defenses, if that's the way

10   it plays out.  What we can't live with --

11            THE COURT REPORTER:  I'm sorry.  You have to slow

12   down.

13            MR. SCHERKER:  I'm sorry, ma'am.  I'm trying.

14            THE COURT REPORTER:  "We'll live at trial...."

15            MR. SCHERKER:  We'll live with a trial at which we can

16   present our defenses.

17       What's -- the heart of this order -- and you heard

18   Mr. Thomas, he likes that part of the order, and believes that

19   it reads the way I had thought it read, much as I didn't like

20   the way it read -- is that we cannot present our defenses as a

21   matter of law.

22       Now, I understand the practicalities of the Court's

23   schedule and trial schedules.  But let's go back to the

24   fundamental test for granting an interlocutory appeal.  I think

25   the discussion that we've had today -- this afternoon
```

```
 1    illustrates very clearly why, especially in a case with a

 2    partial withdrawal of reference, and in the status of the case

 3    and when the case might actually be tried, it makes eminent

 4    good sense to resolve this legal issue now and grant whatever

 5    relief the Court deems appropriate -- we believe that relief

 6    should be you are entitled to raise these defenses at trial --

 7    let the parties finish discovery --

 8         THE COURT:  Yeah, but that's a lot more than just

 9    ruling on whether or not Judge Cristol should have relied on

10    his prior orders as binding.

11         MR. SCHERKER:  But, Judge, if that's --

12         THE COURT:  Now, you're asking me to do the merits

13    side of the summary judgment motions.

14         MR. SCHERKER:  Judge, we can fight that out when we

15    file our briefs on the merits.  If the Court chooses to rule on

16    a narrow issue, the Court chooses to rule on that issue -- and

17    we'll take that ruling, because we'll be in a lot better

18    posture than we are right now to litigate that issue --

19         THE COURT:  No, you won't be.  Because here's what

20    will happen.  Okay?  Here's what's gonna happen.  I allow you

21    leave to appeal on the narrow legal issue of whether or not

22    Judge Cristol should have treated his prior orders as binding,

23    his prior interlocutory orders as binding.  There's briefing.

24    I hear argument.  Let's say I agree with you.  And I tell

25    Judge Cristol, I am setting aside your order to the extent that
```

1   it relied on prior interlocutory rulings as binding.

2        Given that he said in the order that there were alternative

3   legal bases, because he explained his legal rulings in addition

4   to relying on the prior orders, you're going to be back in the

5   same spot where you were before.  You're going to have the

6   exact same order entered yet again, and you're not going to be

7   in a better position then than you are now.

8        MR. SCHERKER:  I completely understand what the Court

9   is saying.  And we -- neither side has briefed the scope of

10  this appeal.  But I know that under 1292(b), from which this --

11  the entire Section 158 procedure derives, that when an order

12  comes before the Eleventh Circuit from a district court, and is

13  appropriately certified and accepted as an interlocutory

14  appeal, the parties aren't bound to litigate only the one

15  narrow legal issue that gives the Court jurisdiction.  I'd be

16  happy to brief that for your Honor, but I'm pretty sure I'm

17  correct, that when the Court takes an appeal of an order, it

18  has an appeal of the order.

19       Now, as any appellate court, the Court is certainly free to

20  rule on the most narrow ground in the case, and I'd be happy to

21  brief the propriety of a reversal to give a judge who erred as

22  a matter of law an opportunity to reconsider that ruling.  And

23  I'm not prepared to say that I assume Judge Cristol will rule

24  against us once the res judicata -- I'm sorry -- law of the

25  case effect of those rulings is eliminated, and we can litigate

```
1    it on a level playing field.  But the relief that the Court
2    ultimately decides to grant, if the case is fully briefed, is a
3    matter for the Court.  And I don't think that --
4              THE COURT:  Why isn't --
5              MR. SCHERKER:  -- I should be denied leave to appeal
6    because the Court might have a narrow ground, which might not
7    do me a whole lot of good.  We think it will.
8              THE COURT:  Why isn't the easiest thing, Mr. Scherker,
9    in practical terms, to just let the case come up once you're
10   done with everything that's pretrial in the bankruptcy court,
11   as you've indicated will happen, and then you can file a motion
12   to reconsider the summary judgment order and raise the same
13   issues there?
14             MR. SCHERKER:  Because, Judge, by the time --
15             THE COURT:  If you're right, and all of those orders
16   are interlocutory, I can go back and revisit all of those
17   interlocutory orders.
18             MR. SCHERKER:  And I believe that's correct.  And I
19   haven't heard the other side say differently.  I think
20   Mr. Thomas embraced that.
21        Our point is that, especially in light of the comments your
22   Honor has made about when this case is going to go to trial,
23   Mr. Thomas noted that we have a motion for additional discovery
24   pending before Judge Cristol.  If the Court were to rule that
25   these defenses are available -- if Judge Cristol were to rule,
```

1   or this Court were to rule, that the defenses are available to

2   us as a matter of law, or at least are not unavailable to us as

3   a matter of law, that could affect future discovery.  It's

4   certainly going to affect trial preparation on our side.

5           THE COURT:  Were you barred from taking discovery on

6   that issue?  I don't think so, not from the evidence that

7   Judge Cristol cited in his order.

8           MR. SCHERKER:  No, I understand.  And this case,

9   obviously, has a long history in both state and federal court.

10  Now, I doubt that there are a whole lot of surprises left, but

11  there is a motion for additional discovery pending, and that

12  ruling will go however it goes.

13     My point is that the whole reason for granting

14  interlocutory appeals at all -- because, Judge, every single

15  bankruptcy interlocutory appeal could ultimately be

16  considered -- interlocutory appeal issue could ultimately be

17  considered on a final appeal.  And every district judge faced

18  with a motion for leave that satisfies the standard would be

19  able to say, well, I could consider that on plenary appeal.

20          THE COURT:  I know, but the problem is that in a

21  lot -- the analogy is not quite apt, because in a lot of

22  interlocutory appeal scenarios, the case is in an infant stage,

23  and a ruling by the district court on some defining legal issue

24  is going to shape the course of the litigation for months or

25  years to come.  Here, you're at the tail end, and there's

1   nothing left to be done.

2           MR. SCHERKER:  Well, Judge, I respectfully --

3           THE COURT:  If you're right, if you are right, you're

4   either gonna get judgment as a matter of law on your two

5   defenses, or you're going to be able to present evidence on

6   those defenses at trial.  And all the discovery, except for the

7   limited discovery you now want to take, has been done.  There's

8   nothing left to do.  There are no economies of scale that will

9   benefit from an interlocutory appeal.  None.

10          MR. SCHERKER:  Judge, if I might, the ruling came when

11  the ruling came.

12          THE COURT:  I know.

13          MR. SCHERKER:  It had been pending for quite some

14  time.  This wasn't a matter of delaying --

15          THE COURT:  I'm not blaming any of you for timing

16  issues.  I'm just saying, given the timing that we have now,

17  I'm wondering whether it just makes sense to deal with it when

18  the case comes here, after everything is done in the bankruptcy

19  court.

20          MR. SCHERKER:  Well, Judge, if we're not gonna be

21  trying this case until 2012, we submit that it would make sense

22  to address the issue now.  If I could go back --

23          THE COURT:  If he denies your motion to take more

24  discovery, you'll be up here in a heartbeat.

25          MR. SCHERKER:  Well, Judge, I don't know that I --

```
 1              THE COURT:  Everything's done, right?  Pretrial
 2    stipulations are filed.  Evidence is closed.  Discovery is
 3    done.  You're ready to go.
 4              MR. SCHERKER:  Judge, I'm not gonna fight too hard
 5    against the notion that we'll be back before the Court to have
 6    this argument on the merits at some point.  I simply go back to
 7    the R & R analogy, because that's effectively what this is
 8    going to become when we're before the Court, and that the
 9    appropriate time to address it is in the earliest stage
10    possible, which is now.  We're before the Court within a very
11    short time after the order was entered.
12              THE COURT:  If I grant you leave to appeal, and you
13    want to bring up everything that was discussed in that summary
14    judgment order, how long is it going to take you to brief the
15    issue -- the issues?
16              MR. SCHERKER:  Judge, you tell me when you want to
17    brief it, and I'll have a brief.
18              THE COURT:  No, no, no, that never works.
19              MR. SCHERKER:  Judge, actually, I mean exactly what I
20    say.
21              THE COURT:  Tomorrow.
22              MR. SCHERKER:  That might be a little impractical.
23              THE COURT:  See, it doesn't work.
24         (Laughter)
25              MR. SCHERKER:  I didn't think you really wanted it
```

1    tomorrow.  But, Judge, if you give us ten days, we'll brief the

2    case.  And I'll abide by that.

3         THE COURT:  See, here's the problem.  I'm trying to

4    think of how to get this case ready to go, given that it looks

5    like I'm going to be the fortunate one trying it again.  And

6    you're looking at a good four to six weeks, at best, at best.

7         Remember, the bankruptcy court has to transmit documents

8    over here.  You could certainly append things to your briefs,

9    but given what I think is a pretty lengthy record down there,

10   that probably wouldn't be feasible.

11        I start a six-week criminal trial Monday.  And my Fridays

12   are largely tied up from now through the middle of July with

13   criminal hearings that I can only attend to on Fridays.

14        So, I'm not going to be getting to oral argument in this

15   case -- because I don't think this is a 15-minute oral argument

16   case, if it was going to be heard -- for a month and a half to

17   two months.  By then, you're probably going to be here.

18        MR. SCHERKER:  Well, Judge, if I might, if it's six of

19   one, half a dozen of the other, which I think is what the

20   Court's saying, it seems to make sense to me to start the

21   process as soon as possible and not wait until things play out

22   in the bankruptcy court, before we can first do exactly what

23   we'll be doing before the Court when the issue's teed up again,

24   in the sense that we would be ahead of the curve, at least to

25   whatever extent we could be.  And I -- Judge, I would not

1    presume to tell any judge in the Southern District of Florida

2    anything about their trial schedules, having been a lawyer in

3    this court for 35 years.

4              THE COURT:  That's okay.  Lawyers do it all the time.

5              MR. SCHERKER:  I don't, at least not in my line of

6    work -- my day job, so to speak.  But I would suggest that if

7    we start this process now, while we're continuing to go through

8    whatever we're doing in the bankruptcy court, or if the Court

9    wanted to stay the bankruptcy proceedings to resolve the legal

10   issue, we would be able to resolve this and be -- have it done,

11   if you will, to whatever extent it's going to be done, before

12   the Court ever was laying hands on paper to consider when this

13   case would go to trial.

14       For what it's worth, I think there's a practical element to

15   it.  And, quite frankly, Judge, I think that's what the third

16   factor of the test is all about -- advancing the ultimate

17   termination of the litigation, as opposed to considering the

18   issues when they would come up in the ordinary course of

19   events.  Although, the ordinary course here is, of course,

20   somewhat different.

21       Thank you, your Honor.

22             THE COURT:  Okay.  Thank you very much.

23             MR. THOMAS:  Your Honor, may I approach?

24             THE COURT:  Yes.

25             MR. THOMAS:  The practical reality is that all that

1  will do is cause delay.  They stood in front of Judge Cristol

2  this morning and told him that if you granted this, that there

3  was no reason to have any further hearings on the pretrial

4  order, because --

5          THE COURT:  If he granted what?

6          MR. THOMAS:  If you granted leave to appeal --

7          THE COURT:  Oh.

8          MR. THOMAS:  -- then that we couldn't possibly do the

9  pretrial order.  There would be other things to do.  It would

10  open up discovery.  And, therefore, we'd never get a pretrial

11  order in the bankruptcy court.  So, it will delay us getting up

12  here.

13     They also told him this morning that there was very limited

14  discovery having to do with Lew Freeman.  And then they just

15  said that if you rule, it will cause more discovery in the

16  bankruptcy court.  So, with due respect, Judge, as far as the

17  immediacy of the appeal, that that's incorrect.  Granting the

18  appeal will slow down everything.

19     From a practical point of view, though, what your Honor

20  said, two things actually do work.  One is just we're gonna be

21  here soon anyway.  As long -- then you can decide whatever

22  you're gonna decide on your schedule.

23     The second is, you can, as you suggested, let Judge Cristol

24  as he's entering the pretrial order also clarify this order,

25  and so you know what you're hearing one way or the other.

1   Either one of those seem to have the right practical effect.

2       As far as your jurisdiction, your Honor, the reference has

3   been removed, so you have jurisdiction all the time over this

4   case.  There's no issue about taking jurisdiction on appeal.

5   Once you had moved the reference, then you allow the bankruptcy

6   court to conduct pretrial proceedings, but jurisdiction already

7   rests in the district court.

8       Is there another issue?

9       Oh, and then, finally, as to the -- of their appeal, on

10  page 8 of their brief, they say what the questions for review

11  are before this Court.  And they are the extremely narrow issue

12  of only whether or not he relied on his prior order.  And if

13  that's what they appealed on, it's the only thing in their

14  brief.  And so, I don't think they meet the standard to appeal.

15  In fact, given what the Eleventh Circuit said about 1292(b), I

16  don't see how they possibly could.  It would be used in its

17  rarest instance.  And they admit that there are other grounds.

18  But that being said, they could only, at the most, appeal on

19  that narrow ground, which would not advance the ball.

20      Thank you for engaging us, your Honor.  We appreciate it.

21  Thanks for the time.

22          THE COURT:  Okay.  Thank you very much.

23      All right.  Here's what I'm going to do.  I am going to

24  grant leave to appeal, just to make sure there aren't any

25  jurisdictional issues, for the limited purpose, at this time,

1    of asking Judge Cristol, if he could, to please clarify the

2    summary judgment order, and to let me know, within whatever

3    time he feels is appropriate, whether or not he meant to bar,

4    on any theory, the in pari delicto/imputation defense or

5    defenses.  Again, whether he meant to bar them for one reason

6    or another as a matter of law, or whether he meant to say that

7    the defendants' motion for summary judgment was denied for the

8    reasons set forth in the latter part of his order, and that at

9    least on one or both of the defenses, the defendants are

10   allowed to present evidence at trial.  Okay?

11       Then, once I get that order from Judge Cristol clarifying

12   what that summary judgment order meant, I will then go back and

13   decide whether or not to continue with the interlocutory

14   appeal.  If I find that there aren't bases for doing it, then I

15   will reconsider my ruling granting leave to appeal, and then

16   deny leave to appeal.

17       If I believe that Judge Cristol's clarification has given

18   more ammunition to the defendants in their request to seek

19   interlocutory appeal, then I'll grant leave to appeal, and

20   we'll go forward.

21       Or, alternatively, I may decide to just simply handle

22   everything through a motion to set aside a prior interlocutory

23   ruling once the case comes up here, given the unique

24   circumstances here.

25       Obviously, you know, a district judge who denies a motion

1  for summary judgment isn't going to keep reconsidering that

2  order time and again as the case goes forward toward trial, but

3  this is obviously a case with two tiers, and Judge Cristol is

4  the one who has heard and ruled on the summary judgment order.

5  And I think I can certainly take a fresh look at that order to

6  get everyone ready for trial.  Okay?

7      So, Mr. Scherker, you can submit to me a proposed order

8  that grants leave to appeal, at this time, for the limited

9  purpose of asking Judge Cristol to clarify the summary judgment

10  order.  Specifically, whether or not he meant to bar the

11  in pari delicto/imputation defenses as a matter of law under

12  any theory, whether he meant to do it because of his prior

13  orders or because of independent view of legal principles, or

14  both, or whether he meant to simply deny your motion for

15  summary judgment on those defenses and force you or allow you

16  to present evidence of those defenses at trial.

17      And I'll go back and reevaluate your motion when I've got

18  that order on clarification from Judge Cristol.

19          MR. SCHERKER:  Judge, we'll prepare the order

20  immediately and send it to the other side before we submit it.

21      May I ask for leave, perhaps, for simultaneous briefing,

22  say ten days after Judge Cristol's order, so that we can

23  address whatever it is that Judge Cristol does to assist the

24  Court in deciding whether or not to consider the appeal?  Not a

25  whole other round of briefing, but perhaps ten days for

```
 1    simultaneous briefing?

 2            THE COURT:  No, because I'll tell you.  What you're

 3    going to do is you're going to submit -- one of you, it doesn't

 4    matter to me who it is -- the minute that order is entered,

 5    file it under this case number.  Okay?

 6            MR. SCHERKER:  Understood, your Honor.

 7            THE COURT:  And I will look at it.  I'll see what it

 8    says.  I'll look at it in conjunction with the prior summary

 9    judgment order, and I will tell you what issues I would like

10    you to brief, and I'll give you a short schedule.

11            MR. SCHERKER:  Thank you, your Honor.

12            THE COURT:  Okay?

13       Okay.  Thank you very much.  Have a good afternoon.

14            MR. THOMAS:  Thank you, Judge.

15            MR. SCHERKER:  Thank you, Judge.

16       (Judge exits courtroom)

17       (Proceedings concluded at 2:40 p.m.)

18                       -  -  -  -  -

19                   C E R T I F I C A T E

20    I certify that the foregoing is a correct transcript from

21     the record of proceedings in the above-entitled matter.

22

23
        /S/Francine C. Salopek                6-6-10
24    Francine C. Salopek, RMR-CRR          Date
      Official Court Reporter
25
```

**$**

**$750** [1]  32/3
**$750 million** [1]  32/3

**/**

**/S/Francine** [1]  53/23

**1**

**10** [1]  53/23
**10-1** [1]  2/16
**10-21635-CIV-JORDAN** [1]  1/4
**10th** [1]  2/6
**11** [2]  31/23 31/24
**12** [1]  6/16
**1221** [1]  2/9
**1292** [3]  37/10 42/10 50/15
**13** [1]  10/4
**14** [2]  2/3 18/6
**15-minute** [1]  47/15
**158** [2]  15/11 42/11
**17** [2]  6/2 27/2
**1807** [1]  2/16
**1:34** [1]  1/11
**1:34 P.M** [1]  3/1

**2**

**200** [1]  2/6
**2005** [4]  7/4 10/5 10/6 10/18
**2006** [3]  7/4 10/17 15/25
**2007** [1]  16/1
**2010** [2]  1/10 3/1
**2012** [3]  30/9 30/14 45/21
**2013** [1]  30/9
**21635** [1]  3/4
**21st** [1]  2/12
**27th** [1]  2/3
**2:40 p.m** [1]  53/17

**3**

**305** [1]  2/17
**33128-1807** [1]  2/16
**33131** [3]  2/6 2/10 2/13
**35** [1]  48/3

**4**

**400** [1]  2/16
**42** [1]  39/8

**5**

**50** [1]  33/18
**523-5568** [1]  2/17
**5568** [1]  2/17
**56** [3]  9/16 9/23 29/23

**6**

**6-6-10** [1]  53/23

**9**

**90291** [1]  2/4
**921** [1]  4/17

**A**

**abide** [1]  47/2
**able** [7]  14/15 25/13 25/14 35/12 44/19
 45/5 48/10
**about** [27]
**above** [1]  53/21
**above-entitled** [1]  53/21
**absolutely** [1]  23/7
**accept** [1]  14/11
**accepted** [1]  42/13
**accountant** [2]  12/3 23/6

**accounting** [1]  12/4
**achieve** [1]  37/13
**actual** [2]  13/18 18/6
**actually** [4]  17/10 41/3 46/19 49/20
**Adalberto** [1]  1/17
**addition** [1]  42/3
**additional** [3]  28/7 43/23 44/11
**address** [8]  4/20 9/11 11/22 15/12 15/17
 45/22 46/9 52/23
**admit** [1]  50/17
**adopted** [1]  39/17
**advance** [1]  50/19
**advances** [1]  17/17
**advancing** [1]  48/16
**advocate** [1]  33/23
**affairs** [2]  24/21 25/12
**affect** [2]  44/3 44/4
**affirmative** [4]  7/8 7/9 16/11 16/25
**after** [6]  23/6 30/13 31/8 45/18 46/11
 52/22
**afternoon** [11]
**again** [11]
**against** [5]  7/2 18/21 37/11 42/24 46/5
**agree** [3]  21/1 24/7 41/24
**agreed** [3]  10/25 19/16 25/24
**ahead** [3]  21/15 31/20 47/24
**al** [2]  1/12 3/6
**Alexander** [9]  2/2 2/3 3/18 3/22 24/25
 26/12 26/16 33/10 35/24
**all** [23]
**allegations** [1]  8/1
**alleged** [1]  32/3
**allow** [3]  41/20 50/5 52/15
**allowed** [7]  21/22 21/25 22/2 22/17
 23/17 28/10 51/10
**allowing** [1]  37/5
**already** [5]  5/1 25/23 30/4 30/25 50/6
**also** [14]
**alternative** [7]  20/21 29/7 33/1 33/15
 34/10 34/11 42/2
**alternatively** [1]  51/21
**although** [2]  15/10 48/19
**always** [2]  30/18 34/21
**am** [4]  13/5 13/5 41/25 50/23
**ammunition** [1]  51/18
**ample** [2]  13/17 13/18
**analogy** [3]  16/8 44/21 46/7
**analysis** [2]  38/19
**ands** [1]  9/5
**announce** [1]  3/7
**another** [2]  50/8 51/6
**answer** [3]  9/25 18/19 26/21
**answering** [1]  18/17
**any** [11]
**anyone** [2]  14/1 31/23
**anything** [3]  19/14 21/24 48/2
**anyway** [5]  12/8 30/4 30/7 32/20 49/21
**anywhere** [1]  26/7
**appeal** [68]
**appealed** [6]  19/8 19/14 32/12 37/11
 38/11 50/13
**appealing** [2]  37/12 38/13
**appeals** [3]  15/3 32/15 44/14
**appearances** [2]  2/1 3/7
**appears** [1]  8/19
**Appellants** [1]  14/24
**appellate** [3]  14/23 14/25 42/19
**append** [1]  47/8
**applicable** [1]  5/2
**application** [1]  6/5
**apply** [1]  10/22
**appreciate** [2]  31/15 50/20
**approach** [2]  27/4 48/23

**appropriate** [5]  6/10 38/21 41/5 46/9
 51/3
**appropriately** [2]  38/16 42/13
**apt** [1]  44/21
**are** [71]
**aren't** [7]  6/25 20/11 22/17 23/17 42/14
 50/24 51/14
**argue** [2]  22/25 25/6
**argued** [3]  20/24 21/6 21/9
**arguing** [2]  6/20 26/17
**argument** [6]  20/25 23/22 41/24 46/6
 47/14 47/15
**arguments** [2]  6/25 7/5 7/17
**around** [2]  20/12 22/25
**aside** [3]  24/24 41/25 51/22
**ask** [6]  8/22 17/24 25/2 29/21 32/11
 52/21
**asked** [1]  35/24
**asking** [12]
**assert** [1]  14/25
**asserting** [1]  10/13
**assist** [1]  52/23
**assume** [3]  5/7 19/13 42/23
**assumed** [1]  12/5
**attend** [1]  47/13
**attributed** [3]  12/1 12/6 25/22
**audit** [2]  12/4 21/2
**avail** [1]  10/23
**available** [2]  43/25 44/1
**Avenue** [3]  2/3 2/9 2/16
**aware** [1]  26/7
**awareness** [1]  14/6
**away** [1]  31/5

**B**

**back** [26]
**ball** [1]  50/19
**Bank** [3]  13/22 14/6 14/7
**BANKEST** [8]  1/6 9/21 10/9 10/12 12/16
 13/20 20/18 33/19
**Bankest,** [1]  3/5
**bankruptcy** [44]
**bar** [7]  8/17 26/11 28/12 29/25 51/3 51/5
 52/10
**barred** [22]
**barrier** [1]  15/21
**barring** [2]  20/22 34/6
**Barry** [2]  3/4 3/18
**bars** [2]  6/22 25/19
**based** [7]  10/13 10/24 13/10 28/12 33/4
 33/6 33/6
**bases** [3]  19/11 42/3 51/14
**basically** [1]  26/17
**basis** [2]  6/7 36/20
**BDO** [18]
**BDO International** [1]  3/15
**BDO Seidman** [2]  3/9 4/1
**be** [84]
**bears** [1]  15/4
**because** [76]
**become** [1]  46/8
**been** [8]  11/20 16/24 17/2 28/11 45/7
 45/13 48/2 50/3
**before** [30]
**beginning** [3]  29/9 33/23 38/1
**behalf** [6]  3/9 3/14 3/18 3/22 13/19 14/7
**being** [4]  14/15 17/15 27/11 50/18
**believe** [10]  4/7 6/3 11/21 14/10 17/24
 18/3 38/25 41/5 43/18 51/17
**believed** [1]  13/10
**believes** [1]  40/18
**benefit** [5]  10/12 15/4 20/18 21/9 45/9
**Benefits** [1]  30/13 31/9 31/22 32/2

## B

**Berger [2]** 2/5 3/21
**best [4]** 10/3 13/3 47/6 47/6
**better [4]** 8/14 17/25 41/17 42/7
**between [2]** 25/25 39/13
**beyond [1]** 12/2
**big [1]** 35/1
**binding [10]** 5/9 5/16 7/6 7/18 11/17
 34/3 41/10 41/22 41/23 42/1
**Biscayne [3]** 2/6 2/12 2/13
**bit [1]** 10/1
**blaming [1]** 45/15
**blinders [1]** 38/22
**Bloom [2]** 2/8 3/10
**Blvd [1]** 2/6
**both [10]** 27/17 28/20 29/1 29/4 30/1
 37/20 38/5 44/9 51/9 52/14
**bother [1]** 32/11
**Boulevard [1]** 2/13
**bound [1]** 42/14
**Brickell [1]** 2/9
**brief [10]** 13/17 42/16 42/21 46/14 46/17
 46/17 47/1 50/10 50/14 53/10
**briefed [5]** 11/24 37/25 38/16 42/9 43/2
**briefing [4]** 41/23 52/21 52/25 53/1
**briefs [2]** 41/15 47/8
**Brigid [2]** 2/8 3/10
**bring [1]** 46/13
**Broad [2]** 2/12 3/14
**broader [1]** 23/21
**buts [1]** 9/5

## C

**cahoots [1]** 27/15
**calendar [1]** 31/20
**California [1]** 2/4
**calling [2]** 25/8 32/11
**came [3]** 33/1 45/10 45/11
**can [28]**
**can't [23]**
**cannot [4]** 10/23 11/5 27/8 40/20
**capital [1]** 10/24
**case [63]**
**cases [2]** 31/10 31/25
**Cassel [2]** 2/12 3/14
**caught [1]** 35/25
**cause [2]** 49/1 49/15
**Cech [2]** 2/8 3/10
**certain [1]** 9/19
**certainly [6]** 8/8 34/3 42/19 44/4 47/8
 52/5
**certified [1]** 42/13
**certify [1]** 53/20
**challenge [1]** 6/10
**chambers [1]** 27/6
**chance [1]** 12/11
**change [2]** 34/19 36/10
**changes [1]** 34/20
**chooses [1]** 41/15 41/16
**Circuit [2]** 42/12 50/15
**circumstances [1]** 51/24
**cite [2]** 16/2 20/6
**cited [4]** 12/18 21/5 32/15 44/7
**cites [1]** 12/24
**citing [1]** 7/4
**CIV [1]** 1/4
**civil [1]** 31/6
**claim [4]** 25/5 25/9 27/14 35/4
**claiming [1]** 24/9
**claims [7]** 6/22 7/2 7/16 7/22 10/13
 33/20 35/11
**clarification [3]** 39/2 51/17 52/18

**clarify [8]** 29/22 36/2 36/18 37/6 37/12
 49/24 51/1 52/9
**clarifying [1]** 51/11
**cleanly [1]** 4/12
**clear [1]** 4/16
**clearly [1]** 41/1
**client [1]** 25/13
**close [2]** 21/17 21/19
**closed [1]** 46/2
**co [1]** 3/21
**co-counsel [1]** 3/21
**coconspirator [4]** 22/9 22/10 22/11 24/4
**coconspirators [3]** 20/5 20/5 21/8
**codefendant [1]** 3/15
**coin [1]** 37/21
**come [7]** 15/10 18/5 21/3 35/24 43/9
 44/25 48/18
**comes [4]** 36/6 42/12 45/18 51/23
**comfortable [1]** 25/23
**coming [3]** 18/23 29/7 32/1
**comments [1]** 43/21
**commits [1]** 38/7
**committed [1]** 6/21
**company [1]** 20/19
**comparative [1]** 25/7
**competing [1]** 18/6
**complete [1]** 11/20
**completely [4]** 9/6 9/24 16/24 42/8
**computer [1]** 1/24
**conceptually [1]** 21/17
**concluded [1]** 53/17
**conclusion [1]** 11/10
**conclusory [1]** 8/1
**concoct [1]** 23/4
**conduct [5]** 10/8 27/25 38/3 38/8 50/6
**confusing [1]** 28/15
**conjunction [1]** 33/8
**consider [7]** 15/2 17/13 17/14 39/5
 44/19 48/12 52/24
**considerable [1]** 17/7
**consideration [1]** 15/4
**considered [3]** 37/5 44/16 44/17
**considering [1]** 48/17
**construction [1]** 8/21
**constructive [1]** 13/19
**continue [1]** 51/13
**continuing [1]** 48/7
**controlling [7]** 4/10 4/20 6/13 6/15 11/23
 22/21 38/15
**cooperates [1]** 30/16
**corporate [1]** 22/19
**corporation [5]** 13/2 22/19 22/20 23/2
 23/6
**corporation's [1]** 25/12
**correct [8]** 5/22 15/20 22/15 28/19 38/21
 42/17 43/18 53/20
**could [22]**
**couldn't [6]** 5/14 12/20 16/16 24/2 25/7
 49/8
**counsel [2]** 3/21 39/9
**couple [1]** 22/24
**course [9]** 4/9 4/14 12/20 26/14 38/4
 44/24 48/18 48/19 48/19
**court [113]**
**court's [5]** 17/13 24/12 24/17 37/24
 38/14 40/22 47/20
**courtroom [4]** 3/2 14/1 39/7 53/16
**cousins [1]** 38/4
**creating [1]** 12/19
**credit [1]** 39/7
**creditors [1]** 23/5
**criminal [8]** 30/12 30/13 30/15 31/1 31/9
 31/17 47/11 47/13

**Cristol [26]**
**Cristol's [6]** 29/16 39/8 39/18 39/19
 51/17 52/22
**cross [1]** 28/23
**cross-motion [1]** 28/23
**CRR [2]** 2/14 53/24
**crystallizing [1]** 15/4
**curve [1]** 47/24
**cuts [1]** 31/23

## D

**date [2]** 30/6 53/24
**day [1]** 48/6
**days [5]** 14/2 18/6 47/1 52/22 52/25
**deadline [1]** 17/21
**deal [3]** 36/6 36/13 45/17
**deals [1]** 9/15
**Debtor [1]** 1/7
**December, [1]** 15/20
**December, 2006 [1]** 15/25
**decide [6]** 28/15 30/7 49/21 49/22 51/13
 51/21
**decided [1]** 4/12
**decides [1]** 43/2
**deciding [2]** 36/15 52/24
**decree [1]** 29/6
**deems [1]** 41/5
**defeats [1]** 38/1
**defect [1]** 21/3
**defendant [3]** 27/14 27/25 28/2
**defendants [4]** 1/13 31/12 51/9 51/18
**defendants' [2]** 5/2 51/7
**defense [24]**
**defenses [35]**
**defines [1]** 4/11
**defining [1]** 44/23
**defraud [1]** 23/5
**defrauded [2]** 20/13 21/3
**delay [2]** 49/1 49/11
**delaying [1]** 45/14
**delicto [42]**
**denied [8]** 5/21 8/5 9/9 28/11 32/25 35/4
 43/5 51/7
**denies [2]** 45/23 51/25
**deny [5]** 24/3 36/4 39/25 51/16 52/14
**denying [5]** 16/13 28/7 29/23 34/7 37/8
**depending [1]** 31/22
**derives [1]** 42/11
**described [1]** 37/1
**despite [1]** 21/22
**detect [8]** 10/11 10/13 10/25 20/12 21/1
 22/4 22/24 24/7
**detected [1]** 24/10
**determination [1]** 17/17
**determining [1]** 17/8
**devil's [1]** 33/23
**did [8]** 6/15 9/9 11/25 12/3 15/16 19/8
 28/3 29/1
**didn't [14]**
**difference [2]** 36/25 39/13
**different [17]**
**differently [3]** 8/20 26/22 43/19
**difficult [1]** 39/20
**director [1]** 22/4
**directors [11]**
**disallowance [7]** 7/4 10/6
**discovery [14]**
**discretion [3]** 17/7 17/8 37/10
**discussed [1]** 46/13
**discusses [1]** 9/16
**discussion [6]** 26/15 28/1 28/7 33/13
 38/23 40/25
**dismiss [3]** 7/25 10/17 18/22

## D

disputed [5]  4/25 20/11 20/17 20/20 29/25
distinct [1]  22/6
district [15]
DIVISION [1]  1/3
do [32]
docket [1]  30/15
doctrine [2]  25/19 26/20
doctrines [1]  21/17
documents [1]  47/7
does [8]  4/14 5/17 22/24 26/10 26/24 27/1 31/3 52/23
doesn't [15]
doing [4]  27/17 47/23 48/8 51/14
don't [35]
done [10]  28/19 29/12 43/10 45/1 45/7 45/18 46/1 46/3 48/10 48/11
door [4]  25/4 25/7 25/22 26/3
doubt [1]  44/10
down [8]  11/19 17/19 17/19 34/5 38/10 40/12 47/9 49/18
dozen [1]  47/19
due [1]  49/16
duties [2]  12/4 12/5
duty [7]  10/11 11/25 21/2 22/3 22/24 23/1 24/8

## E

E.S [1]  1/6
E.S. [1]  3/5
E.S. Bankest, v. BDO Seidman, LLP [1]  3/5
earlier [1]  25/24
earliest [3]  30/14 30/15 46/9
easier [1]  28/15
easiest [1]  43/8
economies [1]  45/8
effect [5]  5/19 11/3 11/12 42/25 50/1
effectively [1]  46/7
efficiency [1]  37/13
efficient [3]  17/16 36/15 37/8
eight [4]  6/21 30/11 30/13 31/9
eight-month [2]  30/11 30/13
either [9]  8/7 14/9 15/14 18/5 35/11 35/13 36/20 45/4 50/1
element [2]  25/18 48/14
Eleventh [2]  42/12 50/15
eliminated [1]  42/25
Elliot [2]  2/7 3/8
else [3]  16/14 26/7 31/18
embraced [1]  43/20
Emily [2]  2/2 3/18
eminent [1]  41/3
end [2]  28/19 44/25
engagement [3]  12/2 20/10 21/2
engages [1]  23/3
engaging [1]  50/20
enough [2]  14/8 39/6
enter [5]  9/10 9/15 20/21 35/1 39/14
entered [4]  20/13 42/6 46/11 53/4
entering [2]  39/15 49/24
enters [1]  3/2
entire [1]  42/11
entirely [1]  15/14
entitled [6]  13/4 13/10 16/4 21/7 41/6 53/21
erred [3]  5/8 19/10 42/21
erroneously [1]  11/4
especially [2]  41/1 43/21
Espirito [4]  13/22 14/6 14/7 23/13
Esq [8]  2/2 2/2 2/5 2/7 2/8 2/8 2/11 2/11

essence [1]  27/16
essentially [1]  15/9
established [2]  4/7 4/20
et [2]  1/12 3/6
et al [1]  3/6
even [9]  14/10 21/12 32/11 34/3 34/14 34/16 38/21 38/25 39/23
events [1]  48/19
ever [1]  48/12
every [3]  16/1 44/14 44/17
everybody [2]  8/19 19/16 25/11 34/9
everyone [5]  19/5 33/19 34/5 34/8 52/6
everything [8]  9/23 32/13 36/6 43/10 45/18 46/13 49/18 51/22
Everything's [1]  46/1
evidence [17]
evidentiary [1]  25/18
exact [2]  11/19 42/6
exactly [13]
example [1]  21/21
exceeded [1]  32/3
except [2]  36/10 45/6
excuse [1]  22/19
exercise [1]  17/7
Exhibit [2]  5/2 37/23
Exhibit 3 [1]  37/23
Exhibit 5 [1]  5/2
exits [1]  53/16
explained [1]  42/3
explaining [1]  39/19
exposure [1]  31/11
extant [1]  13/7
extent [3]  41/25 47/25 48/11
extremely [2]  14/24 50/11
eye [1]  35/25

## F

face [1]  14/11
faced [1]  44/17
fact [24]
factor [1]  48/16
facts [5]  7/25 8/2 13/11 14/1 35/18
factual [4]  4/17 4/18 13/16 40/3
failed [1]  10/13
fair [1]  37/4
fairly [2]  38/23 39/6
far [3]  12/2 49/16 50/2
faster [1]  30/24
fault [1]  25/7
favor [1]  9/7 9/10 29/22
favorable [2]  12/15 23/16
feasible [1]  47/10
February [3]  30/12 31/8 31/21
federal [1]  44/9
feels [1]  51/3
few [1]  20/2
field [3]  12/12 34/9 43/1
fight [2]  41/14 46/4
file [5]  17/22 36/20 41/15 43/11 53/5
filed [3]  4/25 35/18 46/2
final [3]  15/8 17/14 44/17
finally [1]  50/9
find [2]  34/2 51/14
finds [1]  9/17
finish [1]  41/7
firm [2]  3/22 12/4
first [7]  4/9 4/23 4/25 19/9 28/5 29/11 47/22
fit [1]  36/7
five [4]  13/24 18/13 29/6 32/23
five-month [1]  13/24
Floor [2]  2/6 2/12
FLORIDA [9]  1/2 1/10 2/6 2/10 2/13 2/16

5/11 5/13 48/1
focuses [1]  27/24
following [1]  15/1
follows [1]  6/17
force [1]  52/15
forced [1]  15/2
foregoing [1]  53/20
forgot [1]  14/2
form [1]  39/4
Forrester [2]  2/3 3/22
forth [2]  19/22 51/8
fortunate [1]  47/5
forward [12]
found [1]  24/1
four [7]  6/21 13/19 13/21 23/14 23/15 29/6 47/6
Francine [2]  2/14 53/23 53/24
frankly [3]  39/20 40/4 48/15
fraud [23]
fraudulent [1]  10/8
free [2]  38/23 42/19
free-ranging [1]  38/23
FREEMAN [9]  1/9 6/22 7/11 8/13 9/10 12/6 35/21 39/10 49/14
Freeman's [3]  7/2 7/16 7/22
fresh [1]  52/5
Fridays [2]  47/11 47/13
front [4]  27/3 36/22 36/23 49/1
full [1]  15/1
fully [3]  4/7 11/24 43/2
fundamental [1]  40/24
funky [3]  5/10 9/14 28/14
further [3]  10/20 26/13 49/3
future [2]  30/5 44/3

## G

gave [1]  11/4
genuine [6]  6/6 6/9 7/8 12/19 19/3 20/2
get [26]
gets [3]  9/7 21/10 40/5
getting [3]  29/19 47/14 49/11
give [6]  12/22 18/13 29/6 42/21 47/1 53/10
given [11]
gives [3]  11/23 13/12 42/15
giving [2]  11/11 26/20
go [40]
goes [13]
going [47]
Gold [2]  14/19 38/18
Gold's [2]  4/10 14/16
gonna [17]
good [18]
got [5]  9/24 27/5 30/11 31/22 52/17
gotten [1]  40/6
government [1]  32/8
grant [16]
granted [6]  9/7 35/22 38/20 49/2 49/5 49/6
granting [6]  4/5 9/22 40/24 44/13 49/17 51/15
grants [2]  39/24 52/8
Greenberg [2]  2/9 3/9
ground [4]  6/4 42/20 43/6 50/19
grounds [11]
guess [3]  26/17 36/14 37/17
Guidelines [1]  31/11

## H

had [20]
hadn't [2]  19/13 37/4
half [2]  47/16 47/19
handed [1]  35/20

## H

handle [1] 51/21
hands [1] 48/12
happen [4] 15/24 41/20 41/20 43/11
happened [1] 29/8
happens [4] 16/20 19/6 19/18 28/22
happy [4] 4/1 13/17 42/16 42/20
hard [1] 46/4
has [19]
hate [2] 13/15 35/25
have [53]
haven't [2] 35/20 43/19
having [4] 4/12 38/23 48/2 49/14
he [49]
he's [10] 8/13 8/15 11/11 11/15 26/23
34/6 34/7 35/19 36/3 49/24
head [1] 29/16
heading [1] 10/4
hear [2] 4/1 41/24
heard [5] 14/1 40/17 43/19 47/16 52/4
hearing [2] 1/16 49/25
hearings [2] 47/13 49/3
heart [1] 40/17
heartbeat [1] 45/24
heels [1] 31/22
held [4] 7/2 7/15 10/17 10/20
Hello [1] 18/16
help [1] 9/2
hen's [1] 32/16
her [1] 35/25
here [22]
here's [7] 23/23 28/19 35/17 41/19 41/20
47/3 50/23
herein [1] 14/23
Hey [1] 34/23
high [1] 31/12
him [9] 8/17 9/12 11/16 34/2 34/5 37/5
37/12 49/2 49/13
his [21]
history [1] 44/9
Honor [28]
Honorable [1] 1/17
hopefully [1] 12/12
how [10] 9/18 13/20 14/2 25/2 25/3
31/23 34/18 46/14 47/4 50/16
however [1] 44/12
huh [1] 32/1
Hum [1] 32/4
hurry [1] 30/18

## I

I'd [3] 17/24 42/15 42/20
I'll [12]
I'm [47]
I've [8] 9/3 9/24 18/21 20/8 27/5 30/11
31/22 52/17
ifs [1] 9/5
illustrates [1] 41/1
immediacy [1] 49/17
immediately [1] 52/20
impermeable [1] 15/21
important [5] 6/13 10/22 14/13 16/22
38/9
importantly [1] 15/5
impractical [1] 46/22
improperly [1] 11/16
imputation [52]
imputation/in pari delicto [8] 5/12 6/5
6/20 14/15 19/17 26/23 36/25 40/8
impute [1] 13/1
imputed [3] 6/21 10/8 22/20
in pari delicto [32]

in pari delicto/imputation [2] 51/4 52/11
includes [1] 23/19
inconsistency [1] 37/6
inconsistent [1] 32/22
incorrect [1] 49/17
independent [6] 6/4 18/24 19/11 20/14
26/20 52/13
independently [1] 28/19
indicated [2] 12/15 43/11
individuals [1] 22/21
infant [1] 44/22
initially [1] 7/24
innocent [7] 21/11 22/4 23/14 23/15
23/20 23/21 24/22
inside [1] 28/2
insiders [1] 13/2
instance [1] 50/17
interlocutory [31]
International [2] 2/11 3/15
interpret [1] 8/11
interpreted [3] 8/8 8/24 9/22
intertwined [1] 21/17
intervention [1] 14/22
involved [2] 4/17 25/12
irrelevant [2] 29/5 40/4
irrespective [1] 27/25
is [156]
isn't [8] 8/10 8/21 25/14 34/10 34/21
43/4 43/8 52/1
issue [39]
issue's [1] 47/23
issues [29]
issuing [1] 29/5
it [144]
it's [28]
its [8] 5/8 10/17 14/11 17/7 19/10 31/22
39/2 50/16
itself [3] 10/23 23/6 23/20

## J

January, [1] 16/1
January, 2007 [1] 16/1
Jersey [1] 21/4
job [2] 20/11 48/6
joint [1] 18/6
JORDAN [2] 1/4 1/17
judge [97]
Judge Cristol [26]
Judge Cristol's [6] 29/16 39/8 39/18
39/19 51/17 52/22
Judge Gold [2] 14/19 38/18
Judge Gold's [2] 4/10 14/16
judge's [1] 39/15
judges [1] 29/5
judgment [54]
judgment's [1] 28/11
judicata [1] 42/24
July [1] 47/12
June [2] 1/10 3/1
JUNE 3 [1] 3/1
jurisdiction [7] 11/24 39/3 42/15 50/2
50/3 50/4 50/6
jurisdictional [1] 50/25
just [34]

## K

keep [2] 36/1 52/1
keeps [1] 7/23
knew [4] 22/21 27/17 28/3 33/19
know [47]
knowing [1] 39/14
knowledge [4] 9/20 9/21 13/19 25/18
25/21 25/22 26/3 27/10

knows [2] 13/25 34/8

## L

L.C [1] 1/6
lack [2] 8/14 9/20
laid [1] 12/14
language [1] 11/2
largely [1] 47/12
last [1] 14/20
later [2] 15/7 27/1
latter [1] 51/8
Lauer [1] 31/21
Laughter [3] 32/10 37/18 46/24
law [67]
lawyer [1] 48/2
Lawyers [1] 48/4
laying [1] 48/12
lead [1] 33/2
leads [2] 19/5 33/16
least [10] 20/14 22/18 24/18 33/18 34/8
36/23 44/2 47/24 48/5 51/9
leave [25]
leaves [1] 5/18
left [5] 7/7 35/15 44/10 45/1 45/8
legal [25]
legally [3] 22/6 25/23 29/4
lender [1] 13/23
lengthy [1] 47/9
Lenner [1] 4/1
lesser [1] 35/5
let [12]
let's [10] 5/4 5/7 12/9 12/13 19/13 19/15
33/22 33/25 40/23 41/24
letter [1] 21/2
letters [2] 12/2 20/11
letting [4] 9/23 29/24 31/14 31/19
level [3] 12/11 14/6 43/1
Lew [2] 35/21 49/14
LEWIS [2] 1/9 39/10
Lewis B [1] 39/10
light [4] 12/15 13/13 23/15 43/21
like [9] 8/8 28/6 31/16 34/1 36/19 40/5
40/19 47/5 53/9
likely [2] 15/23 32/6
likes [1] 40/18
limited [8] 35/23 38/11 38/12 39/1 45/7
49/13 50/25 52/8
linchpin [1] 12/6
line [1] 48/5
litigate [6] 12/11 15/19 23/17 41/18
42/14 42/25
litigation [2] 44/24 48/17
little [4] 7/1 10/1 31/3 46/22
live [4] 40/8 40/10 40/14 40/15
LLP [3] 1/12 2/3 3/5
long [4] 44/9 46/14 49/21
longer [1] 5/12
look [10] 6/2 17/9 18/25 23/23 27/1
30/17 32/6 52/5 53/7 53/8
looked [2] 19/1 38/12
looking [4] 9/18 27/2 30/14 47/6
looks [2] 28/5 47/4
looted [1] 20/19
looting [1] 20/19
lose [15]
losing [2] 34/21 35/9
loss [2] 35/2 35/5
losses [1] 32/2
lost [1] 19/11
lot [9] 28/15 31/12 31/17 41/8 41/17
43/7 44/10 44/21 44/21
lumped [1] 38/5

**M**

**made [2]** 9/3 43/22
**magistrate [4]** 15/9 15/13 15/15 15/15
**make [10]** 6/25 23/22 28/14 28/24 30/9
 31/17 35/13 45/21 47/20 50/24
**makes [7]** 7/5 7/17 17/16 23/7 26/16
 41/3 45/17
**many [1]** 14/2
**Mark [4]** 2/8 2/11 3/10 3/13
**material [15]**
**matter [37]**
**matters [1]** 4/11
**may [15]**
**maybe [5]** 9/24 16/14 18/17 30/23 31/15
**me [35]**
**mean [12]**
**means [8]** 6/18 8/17 14/12 16/17 16/18
 16/22 29/25 36/16
**meant [10]** 7/13 36/18 37/6 51/3 51/5
 51/6 51/12 52/10 52/12 52/14
**mechanical [1]** 1/24
**meet [2]** 30/4 50/14
**Mendez [1]** 14/2
**merits [7]** 11/13 11/22 15/2 15/3 41/12
 41/15 46/6
**MIAMI [7]** 1/3 1/10 2/6 2/10 2/13 2/16
 2/16
**middle [1]** 47/12
**might [12]**
**million [1]** 32/3
**mind [3]** 14/19 23/19 39/8
**minute [3]** 33/1 47/15 53/4
**minutes [1]** 18/13
**mistake [1]** 9/3
**Monday [1]** 47/11
**monster [1]** 31/8
**month [7]** 13/24 30/11 30/12 30/13 31/7
 31/21 47/16
**months [6]** 16/10 31/9 31/24 31/24
 44/24 47/17
**more [10]** 17/16 17/16 17/22 31/25
 35/19 37/7 41/8 45/23 49/5 51/18
**morning [7]** 3/11 3/12 3/16 18/4 35/21
 49/2 49/13
**most [8]** 6/24 10/21 12/15 23/16 29/5
 36/14 42/20 50/18
**motion [38]**
**motions [3]** 5/2 17/23 41/13
**motivation [1]** 39/15
**move [2]** 34/23 35/2
**moved [2]** 13/6 50/5
**moves [2]** 6/19 8/2
**Mr. [24]**
**Mr. Freeman [3]** 7/11 8/13 9/10
**Mr. Freeman's [1]** 7/22
**Mr. Lenner [1]** 4/1
**Mr. Mendez [1]** 14/2
**Mr. Mukamal [2]** 7/12 12/15
**Mr. Scherker [7]** 4/2 18/10 28/4 33/23
 37/19 43/8 52/7
**Mr. Singerman's [1]** 35/25
**Mr. Thomas [8]** 8/18 14/17 37/16 38/10
 39/6 40/18 43/20 43/23
**Ms. [5]** 24/25 26/12 26/16 33/10 35/24
**Ms. Alexander [5]** 24/25 26/12 26/16
 33/10 35/24
**much [10]** 9/18 15/11 18/11 37/16 38/5
 39/19 40/19 48/22 50/22 53/13
**Mukamal [4]** 3/4 3/18 7/12 12/15
**multiple [2]** 32/17 32/21
**must [1]** 38/15
**Mutual [4]** 30/13 31/9 31/22 32/2

**my [13]**
**myself [1]** 14/9

**N**

**narrow [9]** 19/8 32/13 41/16 41/21 42/15
 42/20 43/6 50/11 50/19
**narrowly [1]** 37/11
**NCP [1]** 21/5
**near [1]** 30/5
**need [5]** 14/9 16/5 16/25 27/5 30/3
**needed [1]** 17/1
**needs [2]** 7/19 17/9
**neither [1]** 42/9
**never [6]** 12/5 12/11 15/8 39/24 46/18
 49/10
**new [3]** 16/20 21/4 26/20
**New Jersey [1]** 21/4
**next [5]** 10/19 30/12 30/23 31/8 31/13
**nine [1]** 31/24
**no [31]**
**nobody [1]** 8/5
**None [1]** 45/9
**nonetheless [2]** 9/16 11/18
**nonfinal [1]** 17/9
**nonstipulated [1]** 35/18
**normally [1]** 30/23
**North [1]** 2/16
**not [86]**
**noted [3]** 4/17 38/18 43/23
**nothing [4]** 16/14 35/16 45/1 45/8
**notice [2]** 38/12 38/13
**notion [1]** 46/5
**now [35]**
**nuance [1]** 26/2
**nuances [2]** 21/20 25/25
**number [9]** 3/4 12/16 19/23 20/25 24/3
 24/7 24/19 38/10 53/5
**Number 10-21635 [1]** 3/4
**number one [2]** 20/25 24/3
**Number two [1]** 24/7
**numbers [1]** 31/23

**O**

**O'Halloran [11]**
**obviously [9]** 13/10 16/17 17/10 18/7
 29/16 38/22 44/9 51/25 52/3
**odd [1]** 31/4
**off [3]** 15/5 26/15 33/13
**offering [1]** 32/8
**officer [2]** 3/5 4/24
**officer's [1]** 10/24
**officers [6]** 12/16 13/21 13/21 13/22
 14/7 22/19
**Official [2]** 2/15 53/24
**Oh [2]** 49/7 50/9
**okay [26]**
**once [8]** 6/14 12/6 36/5 42/24 43/9 50/5
 51/11 51/23
**one [34]**
**ones [1]** 20/1
**only [19]**
**open [1]** 49/10
**opinion [2]** 4/10 4/16
**opponents [1]** 16/19
**opportunity [1]** 42/22
**opposed [1]** 48/17
**oral [2]** 47/14 47/15
**order [110]**
**ordered [1]** 18/4
**orders [16]**
**ordinary [4]** 12/4 17/4 48/18 48/19
**Orlanskys [1]** 20/19
**other [18]**

**otherwise [2]** 15/23 21/25
**our [27]**
**out [15]**
**outright [1]** 23/3
**outside [1]** 21/10
**overturned [1]** 7/7
**overturns [1]** 15/18
**own [2]** 20/10 38/3
**owned [1]** 23/3

**P**

**P.A [2]** 2/5 2/9
**p.m [3]** 1/11 3/1 53/17
**Pacific [6]** 4/10 4/16 14/16 14/20 17/1
 38/18
**page [9]** 4/17 5/3 6/2 6/16 10/4 27/2 38/1
 39/8 50/10
**page 1 [1]** 5/3
**page 12 [1]** 6/16
**page 13 [1]** 10/4
**page 17 [2]** 6/2 27/2
**page 42 [1]** 39/8
**page 5 [1]** 38/1
**page 8 [1]** 50/10
**page 921 [1]** 4/17
**paper [1]** 48/12
**papers [3]** 8/9 11/24 33/1
**paragraph [4]** 10/5 10/15 10/19 14/20
**paragraph 1 [1]** 10/5
**Paragraph 2 [1]** 10/15
**pari [42]**
**part [12]**
**partial [1]** 41/2
**participated [1]** 22/22
**particularly [2]** 14/17 40/7
**parties [3]** 18/5 41/7 42/14
**partners [1]** 21/2
**party [1]** 9/7
**passed [2]** 17/21 18/3
**past [1]** 6/14
**Paul [2]** 2/5 2/9
**pending [3]** 43/24 44/11 45/13
**people [1]** 28/2
**perhaps [3]** 25/7 52/21 52/25
**permitted [1]** 5/11
**perspective [1]** 27/8
**persuasive [1]** 34/4
**place [1]** 29/19
**plaintiff [9]** 1/10 2/2 3/22 8/14 27/15
 27/24 30/18 39/10 39/11
**plaintiff's [4]** 6/22 27/25 28/2 39/17
**plans [1]** 30/9
**play [5]** 5/4 9/23 33/22 33/24 47/21
**played [2]** 33/22 34/1
**playing [3]** 12/11 34/8 43/1
**plays [3]** 11/5 31/20 40/10
**plea [1]** 32/1
**pleaded [1]** 8/2
**pleas [1]** 32/9
**please [6]** 3/3 3/7 3/8 3/13 4/4 51/1
**pled [1]** 7/25
**plenary [2]** 15/1 44/19
**point [18]**
**pose [1]** 18/18
**position [3]** 15/21 17/4 42/7
**possibility [1]** 36/4
**possible [2]** 46/10 47/21
**possibly [1]** 49/8 50/16
**posture [2]** 16/9 41/18
**potential [1]** 15/6
**practical [5]** 43/9 48/14 48/25 49/19 50/1
**practicalities [1]** 40/22
**practice [1]** 36/23

**P**

preclude [1]  6/4
precluded [1]  10/18
preparation [2]  36/11 44/4
prepare [1]  52/19
prepared [1]  42/23
present [12]
presented [2]  30/2 39/11
president [1]  13/22
presume [1]  48/1
pretrial [11]
pretty [3]  38/5 42/16 47/9
principles [1]  52/13
prior [21]
prism [1]  17/10
probably [3]  36/21 47/10 47/17
problem [7]  31/6 32/22 33/15 35/7 36/15 44/20 47/3
procedure [1]  42/11
proceed [2]  24/2 35/4
proceedings [5]  1/24 48/9 50/6 53/17 53/21
process [2]  47/21 48/7
produced [1]  1/24
Products [6]  4/11 4/16 14/16 14/20 17/2 38/18
prolonged [1]  14/24
propose [1]  34/15
proposed [3]  34/12 39/1 52/7
propriety [1]  42/21
pure [3]  4/11 9/4 9/15
purely [1]  20/3
purpose [5]  25/3 25/6 25/20 50/25 52/9
purposes [5]  4/19 25/18 26/18 26/22 27/7
pursue [2]  5/11 5/12
pursuing [2]  8/15 9/6
put [10]  9/19 21/1 21/25 22/2 22/17 25/20 25/21 35/13 35/16 38/22

**Q**

question [16]
questions [3]  38/19 40/3 50/10
quick [1]  33/10
quickly [2]  4/12 7/1
quite [8]  11/4 15/20 27/18 39/20 40/4 44/21 45/13 48/15

**R**

raise [9]  4/22 6/1 6/8 7/24 8/24 11/6 14/15 41/6 43/12
raised [4]  10/16 14/23 16/12 16/16
raising [2]  10/18 15/22
ranging [1]  38/23
rare [1]  32/16
rarest [1]  50/17
rationale [1]  33/16
Raymond [2]  2/11 3/14
RE [1]  1/5
reach [1]  34/4
read [11]
reading [3]  9/18 10/1 37/2
reads [1]  40/19
ready [5]  15/24 16/10 46/3 47/4 52/6
real [1]  33/10
reality [1]  48/25
really [3]  8/5 24/22 46/25
reason [9]  6/12 15/11 18/24 22/23 22/24 25/17 44/13 49/3 51/5
reasonable [2]  8/10 8/21
reasons [11]
rebuttal [1]  18/13

reconsider [5]  16/3 16/4 42/22 43/12 51/15
reconsidering [1]  52/1
record [15]
recorded [1]  1/24
recover [1]  38/2
reevaluate [1]  52/17
refer [1]  37/22
reference [6]  15/14 15/25 16/24 41/2 50/2 50/5
referred [1]  7/11
referring [1]  6/3
regards [1]  23/4
rejecting [2]  7/5 7/16
reliance [2]  38/1 38/6
relied [6]  5/16 11/17 34/2 41/9 42/1 50/12
relief [5]  39/1 39/4 41/5 41/5 43/1
relying [2]  19/10 42/4
remand [1]  39/1
remember [4]  5/20 13/20 14/5 47/7
remove [1]  15/21
removed [2]  12/7 50/3
replacement [1]  27/9
Reporter [3]  2/14 2/15 53/24
reporters [1]  6/25
request [1]  51/18
requirement [1]  4/9
res [1]  42/24
res judicata [1]  42/24
reserve [1]  6/10
reserved [1]  38/20
resolution [3]  14/22 29/7 29/8
resolve [4]  39/20 41/4 48/9 48/10
resolving [1]  12/19
respect [1]  49/16
respectful [1]  37/7
respectfully [2]  14/8 45/2
respond [1]  26/13
response [2]  4/23 36/17
responsible [3]  3/5 4/24 22/21
rests [1]  50/7
result [5]  11/19 26/6 33/16 34/4 34/19
results [1]  33/2
retain [1]  14/24
retrial [1]  15/6
reversal [1]  42/21
reverse [2]  11/16 15/6
reversed [1]  18/8
review [2]  15/16 50/10
revisit [1]  43/16
Rhett [2]  2/11 3/14
ridiculous [1]  30/25
rife [3]  13/16 13/16 13/17
right [43]
RMR [2]  2/14 53/24
RMR-CRR [1]  53/24
role [1]  28/1
Room [1]  2/16
round [1]  52/25
rule [17]
Rule 50 [1]  33/18
Rule 56 [3]  9/16 9/23 29/23
ruled [12]
rules [1]  8/1
ruling [16]
rulings [15]

**S**

said [26]
Salopek [3]  2/14 53/23 53/24
same [20]
Samole [2]  2/8 3/10

Santo [4]  13/22 14/6 14/7 23/13
sat [3]  13/24 31/1 31/16
satisfies [1]  44/18
satisfy [1]  4/7
say [32]
saying [17]
says [20]
scale [1]  45/8
scenario [3]  13/1 34/1 34/1
scenarios [1]  44/22
schedule [3]  40/23 49/22 53/10
schedules [2]  40/23 48/2
scheme [1]  23/4
Scherker [9]  2/7 3/9 4/2 18/10 28/4 33/23 37/19 43/8 52/7
scope [2]  12/2 38/11 42/9
seated [1]  3/3
second [11]
Section [2]  15/11 42/11
Section 158 [2]  15/11 42/11
securities [1]  31/7
see [12]
seek [1]  51/18
seem [2]  31/3 50/1
seems [2]  37/7 47/20
SEIDMAN [4]  1/12 2/7 3/9 4/1
Seidman, [1]  3/5
send [1]  52/20
sense [10]  9/14 17/16 23/7 29/23 31/17 41/4 45/17 45/21 47/20 47/24
sentencing [2]  31/11 31/11
separate [1]  26/24
separately [3]  26/9 26/10 33/7
set [3]  19/22 51/8 51/22
setting [1]  41/25
settled [4]  17/1 17/1 17/2 32/18
several [1]  16/10
shape [1]  44/24
shareholders [2]  23/3 23/4
she [1]  29/6
shifting [1]  7/23
short [2]  46/11 53/10
shot [2]  31/13 31/13
should [11]
shouldn't [5]  5/15 21/22 21/25 22/2 32/19
shows [2]  16/2 39/9
sic [1]  26/2
side [10]  8/7 8/9 31/6 35/1 39/7 41/13 42/9 43/19 44/4 52/20
sides [1]  37/21
similar [1]  26/17
simple [1]  27/15
simply [5]  9/22 17/16 46/6 51/21 52/14
simultaneous [2]  52/21 53/1
since [3]  30/25 31/1 32/16
Singerman [4]  2/5 2/5 3/21 3/21
Singerman's [1]  35/25
single [2]  31/24 44/14
sir [1]  5/6
sit [1]  16/9
sitting [2]  15/9 15/15
six [6]  30/11 30/12 31/9 47/6 47/11 47/18
six-week [1]  47/11
slightly [1]  24/17
slow [4]  17/19 17/19 40/11 49/18
some [19]
somebody [1]  17/24
somehow [2]  26/20 38/11
someone [4]  9/5 28/22 31/18 33/19
something [6]  9/4 16/17 16/18 16/20 25/1 33/10

## S

**sometimes** [1] 7/1
**somewhat** [1] 48/20
**soon** [2] 47/21 49/21
**sorry** [10] 6/23 6/24 11/3 12/23 21/15 24/25 39/25 40/11 40/13 42/24
**sort** [4] 5/10 30/14 31/16 37/12
**sorts** [1] 34/15
**sought** [1] 32/25
**sounds** [1] 36/19
**South** [2] 2/6 2/13
**SOUTHERN** [2] 1/2 48/1
**speak** [3] 7/1 26/8 48/6
**specifically** [2] 10/25 52/10
**spoke** [1] 35/25
**spot** [1] 42/5
**stage** [9] 7/25 8/17 16/25 18/4 18/7 30/5 33/18 44/22 46/9
**standard** [3] 30/4 44/18 50/14
**standards** [4] 4/5 4/8 9/17 19/2
**standing** [2] 30/6 36/23
**start** [4] 18/17 47/11 47/20 48/7
**starting** [1] 31/8
**state** [4] 8/4 24/21 30/21 44/9
**statement** [1] 4/25
**STATES** [3] 1/1 1/18 2/15
**status** [1] 41/2
**staving** [1] 15/5
**stay** [1] 48/9
**staying** [1] 19/15
**stenography** [1] 1/24
**step** [1] 9/2
**Steven** [2] 2/3 3/17
**still** [5] 16/24 17/22 22/25 34/17 39/3
**stipulate** [1] 35/17
**stipulations** [2] 18/5 46/2
**stood** [2] 36/24 49/1
**stopped** [1] 17/20
**stops** [1] 9/6
**story** [1] 28/20
**strategy** [1] 36/11
**structured** [1] 18/20
**study** [1] 4/12
**stuff** [1] 34/15
**submit** [12]
**submitted** [1] 39/9
**submitting** [1] 39/14
**sue** [1] 27/17
**suggest** [2] 21/24 48/6
**suggested** [1] 49/23
**summary** [49]
**suppose** [1] 15/19
**Supreme** [1] 21/4
**sure** [7] 10/2 14/3 14/5 33/11 34/6 42/16 50/24
**surprises** [1] 44/10

## T

**tab** [1] 37/23
**tab 3** [1] 37/23
**tail** [1] 44/25
**take** [14]
**taken** [1] 12/14
**takes** [3] 7/25 26/17 42/17
**taking** [3] 39/6 44/5 50/4
**talk** [1] 12/13
**talking** [4] 27/7 32/14 32/17 38/23
**teed** [1] 47/23
**teeth** [1] 32/16
**tell** [9] 5/15 9/2 23/10 36/17 41/24 46/16 48/1 53/2 53/9
**telling** [5] 23/2 23/5 30/19 31/2 31/7

**tells** [1] 39/7
**ten** [4] 31/23 47/1 52/22 52/25
**term** [1] 8/14
**termination** [1] 48/17
**terms** [4] 12/2 15/25 39/19 43/9
**test** [3] 17/17 40/24 48/16
**testified** [2] 9/20 24/20
**testify** [1] 14/2
**testimony** [3] 12/14 12/18 21/23
**text** [2] 26/24 33/7
**than** [9] 17/25 25/3 33/5 34/12 37/8 37/20 41/8 41/18 42/7
**thank** [13]
**Thanks** [2] 33/12 50/21
**that** [260]
**that's** [51]
**their** [13]
**them** [17]
**themselves** [1] 25/8
**then** [43]
**theories** [5] 5/13 7/12 7/13 9/11 32/24
**theory** [7] 8/15 9/6 13/5 24/3 27/16 51/4 52/12
**there** [51]
**there's** [29]
**therefore** [2] 33/20 49/10
**these** [12]
**they** [68]
**they'll** [3] 36/20 36/22 36/22
**they're** [9] 7/13 20/4 20/15 21/11 21/17 21/19 33/16 35/12 35/14
**thing** [7] 8/22 21/5 25/6 36/18 36/19 43/8 50/13
**things** [6] 32/14 38/24 47/8 47/21 49/9 49/20
**think** [51]
**thinking** [1] 39/15
**third** [1] 48/15
**this** [89]
**Thomas** [12]
**those** [29]
**though** [5] 21/9 25/4 32/12 34/3 49/19
**thought** [4] 7/10 27/18 36/8 40/19
**three** [8] 18/20 23/3 23/4 29/20 30/12 31/7 31/21 32/9
**three-month** [3] 30/12 31/7 31/21
**three-year** [1] 32/9
**through** [12]
**THURSDAY** [1] 3/1
**tied** [1] 47/12
**tiers** [1] 52/3
**time** [17]
**times** [1] 29/5 38/10
**timing** [2] 45/15 45/16
**today** [1] 40/25
**together** [1] 38/5
**told** [2] 49/2 49/13
**tomorrow** [2] 46/21 47/1
**too** [4] 7/1 7/14 26/1 46/4
**top** [2] 13/22 19/3
**toward** [1] 52/2
**Tower** [1] 2/12
**Traband** [1] 3/14
**traditional** [1] 29/23
**transcript** [1] 1/16 1/24 53/20
**transferred** [1] 30/24
**transmit** [1] 47/7
**Traurig** [2] 2/9 3/9
**Trayband** [1] 2/11
**treat** [4] 4/18 26/10 26/22 34/3
**treated** [2] 8/20 41/22
**treating** [1] 5/8
**treats** [2] 26/9 33/7

**trial** [64]
**tried** [4] 17/11 24/23 28/10 41/3
**true** [1] 21/19
**truth** [1] 30/24
**try** [10] 7/9 14/18 19/16 19/16 24/8 30/25 31/6 33/18 33/18 36/14
**trying** [5] 31/5 40/13 45/21 47/3 47/5
**turn** [2] 20/12 22/25
**turns** [2] 11/18 22/20
**Twenty** [1] 14/4
**Twenty-one** [1] 14/4
**twice** [3] 7/2 7/15 18/21
**two** [17]
**types** [1] 35/9

## U

**Uhm** [2] 33/14 36/12
**ultimate** [3] 11/9 17/17 48/16
**ultimately** [8] 11/13 14/18 17/12 17/13 20/20 43/2 44/15 44/16
**unavailable** [1] 44/2
**unaware** [2] 12/16 24/20
**under** [19]
**underlying** [1] 38/19
**understand** [12]
**understood** [3] 24/12 24/16 53/6
**undisputed** [1] 13/11
**unique** [1] 51/23
**UNITED** [3] 1/1 1/18 2/15
**unless** [1] 16/20
**unmistakable** [1] 6/17
**until** [4] 30/9 36/24 45/21 47/21
**up** [17]
**upon** [5] 5/1 28/12 33/4
**us** [15]
**use** [2] 13/15 26/19
**used** [1] 50/16

## V

**v.** [1] 3/5
**Venice** [1] 2/4
**very** [19]
**viable** [1] 33/21
**view** [4] 9/12 33/3 49/19 52/13

## W

**wait** [1] 47/21
**want** [5] 30/18 36/1 45/7 46/13 46/16
**wanted** [2] 46/25 48/9
**wants** [1] 26/12
**was** [38]
**wasn't** [1] 45/14
**waste** [1] 11/20
**way** [20]
**ways** [1] 18/20 34/22
**we** [80]
**we'd** [3] 8/24 13/17 49/10
**we'll** [14]
**we're** [23]
**we've** [2] 12/11 40/25
**weasel** [1] 24/8
**week** [1] 47/11
**weeks** [3] 35/17 35/20 47/6
**well** [30]
**well-established** [1] 4/7
**well-pleaded** [1] 8/2
**went** [3] 19/1 20/23 38/12
**were** [41]
**what** [74]
**what's** [8] 28/14 35/15 40/17 41/20
**whatever** [9] 35/23 36/13 41/4 47/25 48/8 48/11 49/21 51/2 52/23
**when** [29]

## W

**whenever [1]** 32/17
**where [8]** 5/16 9/2 9/6 12/25 23/13 26/18 30/24 42/5
**whether [34]**
**which [38]**
**while [1]** 48/7
**who [8]** 17/24 21/23 25/11 38/7 42/21 51/25 52/4 53/4
**whole [6]** 9/18 31/13 43/7 44/10 44/13 52/25
**why [32]**
**will [24]**
**win [8]** 5/23 5/25 8/4 8/4 14/9 14/10 15/18 24/21
**withdrawal [1]** 41/2
**withdrawn [2]** 15/14 16/24
**within [3]** 18/6 46/10 51/2
**without [5]** 4/12 5/19 14/11 14/22 17/14
**witnesses [1]** 9/20
**won [1]** 8/5
**won't [2]** 32/11 41/19
**wonder [1]** 19/5
**wondering [2]** 9/1 45/17
**word [2]** 13/16 26/19
**words [5]** 14/16 17/17 30/23 39/16 39/17
**work [5]** 27/18 27/19 46/23 48/6 49/20
**works [1]** 46/18
**worst [2]** 33/25 34/1
**worth [1]** 48/14
**would [44]**
**wouldn't [2]** 22/8 47/10
**written [2]** 14/19 32/14
**wrong [11]**
**wrongdoer [1]** 38/2
**wrongdoer's [1]** 38/3
**wrongdoers [1]** 24/5
**wrongdoing [2]** 24/9 24/10
**wrongful [1]** 38/7
**wrote [1]** 38/9

## Y

**Yeah [1]** 41/8
**year [4]** 31/13 31/13 31/24 32/9
**years [2]** 44/25 48/3
**Yes [5]** 5/6 21/19 24/11 27/13 48/24
**yet [3]** 28/6 34/4 42/6
**you [201]**
**you'll [3]** 36/3 36/20 45/24
**you're [38]**
**you've [3]** 37/1 37/5 43/11
**your [59]**
**yours [1]** 9/11